STATE of Minnesota, Respondent,

v.

Victor Donnell FIELDS, Appellant.

No. C0–03–163.

Supreme Court of Minnesota.

May 20, 2004.

---

Sharon Elizabeth Jacks, Assistant State Public Defender, Minneapolis, MN, for Appellant.

Mike A. Hatch, Minnesota Attorney General, Amy Jean Klobuchar, Hennepin County Attorney, Donna J. Wolfson, Assistant County Attorney, Minneapolis, MN, for Respondent.

## OPINION

ANDERSON, RUSSELL A., Justice.

Appellant Victor Donnell Fields was convicted and sentenced in Hennepin County District Court for the crimes of first-degree murder, in violation of Minn. Stat. § 609.185(a)(1) (2002), and attempted first-degree murder, in violation of Minn. Stat. §§ 609.185(a)(1) and 609.17, subd. 1 (2002), in connection with the death of LeTerrance Paige and injury to Keinon Love. On appeal, Fields claims that he was denied a fair trial by the admission of various hearsay statements, that the evidence was insufficient to support the convictions and that the calculation of the duration of his sentence was erroneous. We affirm as modified.

On December 6, 2001, at approximately 3:45 in the afternoon, a city bus was picking up passengers at the bus stop located at 63rd and Zane Avenue in Brooklyn Park. As the driver was about to close the doors and leave, a young man leaned in the front door and fired four shots from a semiautomatic pistol into the full bus, killing 22-year-old LeTerrance Paige and critically wounding 21-year-old Keinon Love. The shooter fled, firing four more rounds into the side of the bus, and ran toward the entrance of the Eden Park Apartments complex north of the bus stop.

Law enforcement officers responded within minutes, tending to the victims and securing the scene. Officers from Brooklyn Park, the Hennepin County Sheriff's Department, Metropolitan Transit Commission police, North Hennepin County Drug Task Force and Brooklyn Center collected evidence, including eight spent .45–caliber cartridge casings ejected from the same semiautomatic, and interviewed witnesses who described the shooter as wearing a black "puffy" down jacket, black winter cap and tan boots. Based on information that the shooter had run to apartment 205 in the building located at 6345 Zane in the Eden Park complex, four officers went to that apartment but found no one who matched the description of the shooter. Other officers formed teams to methodically canvass the entire Eden Park complex for witnesses. The following day, officers rode the same bus route looking for witnesses who may have been overlooked or who had not yet come forward.

During the investigation, the police learned that there had been an earlier incident involving Paige that might lead to information concerning the shooting. Shortly after Thanksgiving, about a week before the shooting, three men robbed 16-year-old Dennis Johnson in front of the convenience store near the same bus stop at 63rd and Zane. Johnson was at that location with Fields' cousin, Edward, and when Edward ran, the three men grabbed Johnson. One of the men pistol-whipped Johnson and took his leather coat, house keys and some money. There was testimony that Fields was later overheard saying that he "had something" for the person who "did the robbery".

Based on this lead, police interviewed Johnson, who stated that he was sitting on the bench at the bus stop on the day of the shooting when Edward approached and, referring to Paige who was near the entrance to the Eden Park complex, said "isn't that the guy who stuck us up?" Johnson said he thought so. Edward walked back toward the store. There was evidence that Edward then "rented" a cell phone for 50 cents and placed a call to the phone number listed to Fields in apartment 205. Johnson told police that, as the bus pulled up, Paige and his girlfriend started walking to the front of the bus and they were followed by Fields, who stopped near the bench to ask Edward and Johnson "like, where he at?" According to

Johnson's statement, after Edward and Johnson motioned toward Paige, Fields walked to the bus, pulled out a semiautomatic gun and started shooting.

As part of the investigation, the police gathered surveillance videotapes from the Eden Park Apartments complex, a check cashing business at a strip mall immediately south of the bus stop and from the convenience store near the bus stop. The surveillance tapes from the day of the shooting showed Fields running toward the bus stop shortly after the cell phone call that Edward placed to Fields' apartment. The tapes showed the bus arriving, people running from the bus stop and then Fields running through the back door of the apartment building and up the stairway to his apartment. The tapes showed Fields wearing clothing that matched the description of the clothing worn by the shooter.

On December 13, 2001, Fields was charged by complaint for murder and assault, an arrest warrant issued and law enforcement attempted to locate him "absolutely everywhere and anywhere." On January 19, 2002, Fields was apprehended in Chicago Heights, Illinois and was subsequently indicted by a grand jury for first- and second-degree murder in the death of Paige, and attempted first- and second-degree murder and first- and second-degree assault in the injury to Love.

While in jail awaiting trial, Fields' telephone privileges were limited to access to his attorneys after he had made threatening calls to several of the state's witnesses, including a threatening call to Dennis Johnson, to the mother of a 10-year-old witness and to a former Hennepin County jail inmate who overheard Fields talk about shooting someone in Brooklyn Park in retaliation for a pistol whipping. At trial, Fields elected not to testify on his own behalf, and instead elicited the testi-

mony of a witness to the shooting to cast doubt on evidence of identity. The jury found Fields guilty as charged. The district court entered judgments of conviction for the first-degree murder of Paige and the attempted first-degree murder of Love and imposed consecutive sentences. This appeal followed.

### I.

 Fields initially challenges the admission of the statements to police and the grand jury testimony of Johnson, who refused to testify at trial. Fields asserts that the evidence was inadmissible under the evidentiary rules and was also barred by the Confrontation Clause. At trial Fields had objected to the admission of both Johnson's grand jury testimony and his earlier statements to the police, but he requested that the police statements be admitted if the court admitted the grand jury testimony. Consequently, the focus of his appeal is on the grand jury testimony. Evidentiary rulings are committed to the district court's discretion and will not be reversed absent a clear abuse of that discretion. *State v. Litzau,* 650 N.W.2d 177, 182 (Minn.2002) (citing *State v. Bjork,* 610 N.W.2d 632, 636 (Minn.2000)). Although appellate courts review the presence or absence of historical facts for clear error, the surrounding circumstances relevant to a Sixth Amendment determination are reviewed de novo. *Lilly v. Virginia,* 527 U.S. 116, 136–37, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999).

### *Evidentiary Rules*

 Dennis Johnson testified before the grand jury and repeated some of the information contained in his statements to police. At trial, he testified briefly but refused to continue, stating that he feared reprisals. After hearing evidence that was highly suggestive of threats and intimidat-

ing overtures directed toward Johnson by Fields, the district court concluded that the grand jury testimony, which was clearly hearsay, was admissible under Minn. R. Evid. 804(b)(5).

Rule 804 sets out those situations in which hearsay statements can be used when the declarant's in-court testimony is unavailable. The rule includes four traditional exceptions to the hearsay rule and then the so-called "catchall" exception that provides:

> *Other exceptions.* A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name, address, and present whereabouts of the declarant.

Minn. R. Evid. 804(b)(5). Here, there is no dispute that Johnson's in-court testimony was unavailable.

■ To be admissible under Rule 804(b)(5), a statement must have "circumstantial guarantees of trustworthiness"

equivalent to those inherent in the other four exceptions of Rule 804(b). Such guarantees of trustworthiness must "be drawn from the totality of circumstances that surround the making of the statement and that render the declarant particularly worthy of belief." *Idaho v. Wright,* 497 U.S. 805, 820, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990); *see* 4 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 506 (2d ed.1994).

Here, in finding a strong indication of reliability in Johnson's testimony, the district court considered that while Johnson was a reluctant witness, his testimony was ultimately voluntary; that there was no relationship to Fields that would make the testimony suspect; that Johnson was relating facts based on personal knowledge so there was *no reliance on possible erroneous secondary information;* that the testimony was consistent with prior police statements; and that the testimony was never recanted. We conclude that Johnson's statements to the police and his grand jury testimony were admissible under Minn. R. Evid. 804(b)(5).

*Confrontation Clause*

■■ This conclusion does not end our inquiry, however, because statements that are admissible under an exception to the hearsay rule are nonetheless inadmissible under the Confrontation Clause [1] unless the prosecution either produces the declarant for cross-examination or demonstrates both that the declarant is unavailable and that the statement bears adequate indicia of reliability. *Wright,* 497 U.S. at 814, 110 S.Ct. 3139. For testimonial statements, however, the only indicium of reliability is a prior opportunity for cross-examination.

---

**1.** The Sixth Amendment provides that in all criminal prosecutions, the accused "shall enjoy the right * * * to be confronted with the witnesses against him * * *." U.S. Const. amend. VI. Evidence admitted at trial must meet the requirements of the Confrontation Clause. *State v. Aubid,* 591 N.W.2d 472, 478 (Minn.1999).

*Crawford v. Washington*, — U.S. —, —, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004) (overruling *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)). The term testimonial applies to prior testimony before a grand jury. *Crawford*, — U.S. at —, 124 S.Ct. at 1374. Here, neither Johnson's statements nor his grand jury testimony were subject to cross-examination.

■ Nevertheless, if a witness is unavailable because of the defendant's own wrongful procurement, "he is in no condition to assert that his constitutional rights have been violated." *Reynolds v. United States*, 98 U.S. 145, 158, 25 L.Ed. 244 (1878); *see State v. Black*, 291 N.W.2d 208, 214 (Minn.1980) (defendant forfeited his confrontation rights by intimidating the witness into silence). *Crawford* recognized that the rule of forfeiture is still valid. *Crawford*, — U.S. at —, 124 S.Ct. at 1370 ("[T]he rule of forfeiture by wrongdoing (which we accept) extinguishes confrontation claims on essentially equitable grounds; it does not purport to be an alternative means of determining reliability.").

Here, the district court found that Fields forfeited his constitutional right to cross-examination. We have carefully and independently reviewed the record and are satisfied that, based on the evidence adduced at trial, the district court's findings that Fields engaged in wrongful conduct, that he intended to procure the unavaila-

bility of Johnson and that the intentional wrongful conduct actually did procure the unavailability of Johnson, were not clearly erroneous.[2] Accordingly, we hold that the admission of Johnson's statements to the police and his grand jury testimony was not an abuse of discretion, nor did it violate the Sixth Amendment.

## II.

Fields also challenges the admission of hearsay statements that a witness to the shooting, Galvin Coleman, made to his sister, and the contents of anonymous tips to the police. Coleman was at the bus stop at 63rd and Zane at the time of the shooting. At Fields' trial, he testified that he saw Fields doing "a little speed walk" to the front of the bus, heard a gun go off and ran so fast he missed the entrance to the Eden Park Apartments complex. When he turned around to go back, he saw Fields trying to put a gun in his jacket as he ran. On cross-examination, defense counsel asked Coleman a series of questions aimed at suggesting that he was involved in the shooting. Later, Coleman's sister was called as a witness by the state and, over objection, she testified that shortly after the shooting, Coleman told her that Fields "had came and shot a dude."

■ Testimony that consists of a prior consistent statement of a witness is admissible if it may be helpful to the trier of fact

---

**2.** The Federal Rules of Evidence provide that when a declarant is unavailable as a witness, "[a] statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness" is not excluded by the hearsay rule. Fed.R.Evid. 804(b)(6). This rule, which became effective December 1, 1997, has "roots in cases holding that wrongful conduct making a declarant unavailable forfeits *both* constitutional protec-

tions * * * *and* hearsay objections themselves, which means that conduct satisfying FRE 804(b)(6) probably amounts as well to a forfeiture of an objection based on the right of confrontation." 4 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 507.1, (2d ed. Supp.2003) (emphasis in original). The Minnesota Rules of Evidence, however, do not include a rule for statements by declarants who are unavailable because of wrongful procurement.

in evaluating the witness' credibility.[3] *State v. Nunn,* 561 N.W.2d 902, 909 (Minn. 1997). Before the statement can be admitted, however, the witness' credibility must have been challenged and the statement "must bolster the witness' credibility with respect to that aspect of the witness' credibility that was challenged." *Id.* Since Fields challenged the credibility of Coleman's testimony, there was no abuse of discretion in the admission of the prior consistent statement.

■ Fields also asserts error in the admission of the substance of information relayed to the police during the initial stages of the investigation. Sgt. Eric Nelson, Brooklyn Park police, testified that within an hour and a half to two hours of arriving on the scene, he went to "6345 Zane, Apartment 205 [Fields' apartment]." When asked "why," the officer testified that "MTC police came in and advised that people were saying that the shooter had run to that apartment."

■ A police officer testifying in a criminal case generally may not, under the guise of explaining how an investigation focused on the defendant, relate hearsay statements of others. *State v. Cermak,* 365 N.W.2d 243, 247 (Minn.1985). But no objection was interposed at trial, presumably because the response gave credence to Fields' theory of the case that the police immediately and prematurely focused on him as the sole suspect. Accordingly, review of this issue is deemed to have been forfeited. *State v. Litzau,* 650 N.W.2d 177, 181 (Minn.2002) ("[W]here a defendant fails to object to a particular error at trial, the defendant is deemed to have

forfeited his right to have the alleged error reviewed on appeal[.]").

### III.

■ Fields argues pro se that the evidence was insufficient to support the jury's verdict. Specifically, he asserts that the evidence was insufficient as to (1) his identity as the shooter; (2) premeditation; and (3) intent. Our review of the sufficiency of the evidence is "limited to a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." *State v. Webb,* 440 N.W.2d 426, 430 (Minn.1989).

■ An individual is guilty of first-degree murder if he "causes the death of a human being with premeditation and with intent to effect the death of the person or of another." Minn.Stat. § 609.185(1) (2002). Premeditation means "to consider, plan or prepare for, or determine to commit, the act referred to prior to its commission." Minn.Stat. § 609.18 (2002). Premeditation "does not require proof of extensive planning or preparation to kill, nor does it require any specific period of time for deliberation." *State v. Cooper,* 561 N.W.2d 175, 180 (Minn.1997). But premeditation does require proof that after the defendant formed the intent and before the commission of the act, some appreciable amount of time elapsed during which the defendant considered, planned, or prepared for his or her actions. *State v. Moore,* 481 N.W.2d 355, 361 (Minn. 1992). Intent "means that the actor either has a purpose to do the thing or cause the result specified or believes that the act, if

---

**3.** Rule 801(d)(1)(B) provides:

A statement is not hearsay if—

(1) The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the state-

ment is * * * (B) consistent with the declarant's testimony and helpful to the trier of fact in evaluating the declarant's credibility as a witness [.]

Minn. R. Evid. 801(d)(1)(B).

successful, will cause that result." Minn. Stat. § 609.02, subd. 9(4) (2002). Intent to cause death "may be inferred from the manner of shooting." *State v. Boitnott*, 443 N.W.2d 527, 531 (Minn.1989) (citing *State v. Harris*, 405 N.W.2d 224, 229 (Minn.1987)).

 Here there was ample evidence of Fields' identity as the shooter, including eyewitness accounts of the shooting and consistent descriptions of the shooter; identifications from photographic lineups; telephone records; jailhouse admissions and surveillance videotapes. As for premeditation and intent, the evidence showed that Fields carried a semiautomatic pistol from his apartment to the bus stop, confirmed the identity of the person who allegedly had attempted to rob his cousin, leaned into a city bus full of people and opened fire, striking the alleged robber and a nearby passenger; and as he fled, Fields fired more rounds into the side of the bus in the direction of the alleged robber. Viewed in a light most favorable to the verdict, we hold that the evidence clearly supports the jury's finding of guilt.

## IV.

Finally, Fields challenges the denial of jail credit and calculation of the duration of his sentence for attempted first-degree murder. At the time of the current offenses, Fields was on probation with a stayed 84-month sentence for burglary that initially was part of an Extended Jurisdiction Juvenile (EJJ) disposition. After revoking probation and executing the 84-month burglary sentence, the court imposed permissive consecutive sentences for the current sentences. The court denied credit for the 571 days Fields spent at the Glen Mills treatment facility in Pennsylvania.

 Fairness and equity require that jail credit be granted where a residen-

tial-treatment facility is the functional equivalent of a jail, workhouse, or regional correctional facility. *Asfaha v. State*, 665 N.W.2d 523, 527-28 (Minn.2003). In denying 571 days of confinement credit, the district court explained that it was "familiar with" the Glen Mills program, which "is an excellent program, but it is a structured residential treatment program and is not incarceration." We agree with the district court. Accordingly, we hold that the denial of credit for time spent at Glen Mills was not clearly erroneous.

With regard to the attempted first-degree murder sentence, the district court imposed a 240-month prison term, an upward durational departure of 40 months based on a 200-month presumptive term. Fields argues, and the state concedes, that when calculated correctly, the presumptive sentence is 180 months. We conclude, as the sentencing court did, that this case presents substantial and compelling reasons for an upward departure of 40 months from the presumptive sentence of 180 months, and we therefore modify Fields' consecutive sentence for attempted first-degree murder to 220 months. *See State v. Mitjans*, 408 N.W.2d 824, 834 (Minn.1987) (45-month departure from the presumptive sentence justified where defendant discharged a long-barreled .38-caliber revolver in a public bar).

Affirmed as modified.