**STATE of Minnesota, Respondent,**

v.

**Moua HER, Appellant.**

**No. A06–1743.**

Supreme Court of Minnesota.

May 6, 2010.

Lori Swanson, Attorney General, and Susan Gaertner, Ramsey County Attorney, Mitchell L. Rothman, Assistant County Attorney, St. Paul, MN, for respondent.

Suzanne M. Senecal–Hill, Assistant State Public Defender, Minneapolis, MN, for appellant.

## OPINION

GILDEA, Justice.

A Ramsey County jury found appellant Moua Her guilty of murdering his estranged wife Sheng Vang. The district court convicted Her of first-degree domestic abuse murder under Minn.Stat.

§ 609.185(a)(6) (2008),[1] and imposed a life sentence. Her appealed his conviction arguing, among other things, that his rights under the Confrontation Clause of the Sixth Amendment were violated when the district court allowed the State to introduce evidence of Vang's March 23, 2004, statements to a police officer. *See State v. Moua Her (Her I)*, 750 N.W.2d 258, 264 (2008). We affirmed Her's conviction and held that because Her intentionally killed Vang, the forfeiture-by-wrongdoing doctrine applied and estopped Her from raising his Confrontation Clause rights. *Id.* at 274–75. Her petitioned for a writ of certiorari in the U.S. Supreme Court, and the Supreme Court vacated and remanded for reconsideration in light of *Giles v. California,* —— U.S. ——, 128 S.Ct. 2678, 171 L.Ed.2d 488 (2008).

We set out the facts surrounding the murder in detail in the opinion in *Her I*. We discuss in this opinion those facts relevant to the remand from the Supreme Court. Those facts relate to the State's evidence on the element of "past pattern of domestic abuse." *See* Minn.Stat. § 609.185(a)(6). In seeking to prove that Her had a "past pattern of domestic abuse," the State introduced evidence of four instances where Her had committed acts of physical abuse against Vang. *Her I,* 750 N.W.2d at 278. Vang reported the first three instances of abuse at a family meeting in March 2001. *See id.* at 278. At the meeting, Vang alleged Her had hit and kicked her, electrocuted her, and poured curry juice over her clothes. *See id.*

The other incident the State used as evidence of a past pattern of abuse was a March 23, 2004, altercation that took place between Her and Vang outside a restaurant located on University Avenue in Saint Paul. Saint Paul police officer Amy Baumhofer was called to the restaurant around 6:00 p.m. and met Vang there. Officer Baumhofer described Vang's condition: "She was very upset, she was crying, she was shaking, and she had a hard time completing sentences. She was very, very upset and had to pause between words to get ... herself composed enough to get the words out so we could understand what had happened." Officer Baumhofer observed "fresh" injury marks under Vang's chin and on her clavicle and stomach.

Vang told Officer Baumhofer that Her had assaulted her just before the police arrived. Vang said that she met Her at the restaurant to talk. During their conversation, Her "pulled [her] into the car by her hair and, as she fell into the passenger seat, her husband had hit her with what she thought was a metal nightstick several times." As he hit her, Vang said that she tried to get away. She tried to leave the car, but it was locked. As Her began to back-up the car, Vang was able to unlock the door, leave, and call the police. After taking Vang's statement, Officer Baumhofer issued a probable cause pick-up for Her for domestic assault and called for a camera car to photograph Vang's injuries. The record does not establish which of these two things Baumhofer did first.

As a result of Vang's report about the incident at the St. Paul restaurant, the State charged Her with domestic assault on March 24, 2004. That same day, Vang obtained a No Contact Order against Her. In May, Her failed to appear for a hearing on the domestic assault charge, and a bench warrant was issued for his arrest. The domestic assault charge was still pending at the time of Vang's murder,[2] and

---

1. Under this statute, it is first-degree murder to "cause[ ] the death of a human while committing domestic abuse, when the perpetrator has engaged in a past pattern of domestic abuse." Minn.Stat. § 609.185(a)(6).

2. The domestic assault charge was not

the warrant and the No Contact Order were still in effect.

Her's jury trial for Vang's murder took place June 5–16, 2006. Following the trial, the jury found Her not guilty of first-degree premeditated murder, but guilty of first-degree domestic abuse murder in violation of Minn.Stat. § 609.185(a)(6) and three counts of second-degree murder. The district court convicted Her of first-degree domestic abuse murder and imposed a life sentence.

Her appealed his conviction, arguing that his Sixth Amendment Confrontation Clause rights were violated when the district court permitted Officer Baumhofer to repeat the statements Vang made to her on March 23, 2004, after the incident at the St. Paul restaurant. We rejected Her's Confrontation Clause challenge in *Her I*, 750 N.W.2d at 264–75. As a preliminary matter, we held that the State had failed to meet its burden to show that Vang's statements to Baumhofer were nontestimonial. *Id.* at 269. In analyzing this question, we applied the newly promulgated "primary purpose" test set forth by the U.S. Supreme Court in *Davis v. Washington*, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), which was decided days after Her's trial ended. *See Her I*, 750 N.W.2d at 269. We next considered the forfeiture-by-wrongdoing doctrine. Her argued that the doctrine should not apply because the State did not demonstrate that his motive for murdering Vang was to prevent Vang from testifying

against him. *Id.* at 269–70. Relying on our precedent, and the policies underlying the Confrontation Clause, we held that the State did not have to prove that the motive for Vang's murder was Her's desire to silence her. *Id.* at 270–74. Rather, we held that the State's demonstration that Her was responsible for Vang's absence from the trial was sufficient to sustain application of the forfeiture-by-wrongdoing doctrine. *Id.* at 274–75.

Approximately one month after we decided *Her I*, the U.S. Supreme Court decided *Giles v. California,* —— U.S. ——, 128 S.Ct. 2678, 171 L.Ed.2d 488 (2008), which also addressed application of the forfeiture-by-wrongdoing doctrine in the context of a murder case. The Supreme Court held that to invoke the forfeiture-by-wrongdoing doctrine, the State must show, not only that the defendant was responsible for the killing, but also that he committed the killing with the intent of preventing the victim from testifying against the defendant. *Id.* at 2684. This case now returns to us from the Supreme Court for our renewed consideration of Her's Confrontation Clause claim in light of *Giles*.[3]

## I.

We begin our analysis with a discussion of *Giles*. In *Giles*, the State of California charged the defendant in connection with the murder of his former girlfriend. The State sought to introduce statements that the victim made to the police three weeks before the murder in which she told the

dropped until December 2005.

**3.** The State argues that we need not reach the issue the Supreme Court remanded to us because any error the district court made in admitting Officer Baumhofer's testimony was harmless. In essence, the State contends that even without Vang's allegation that Her abused her at the St. Paul restaurant, the evidence was sufficient as to the element of past pattern. Because the State did not argue

that the admission of Vang's allegation was harmless during the first appeal, we decline to reach this issue here. *See Her I*, 750 N.W.2d at 269 n. 10. The State also requests that we remand to the district court the question of whether Vang's statements to Baumhofer were testimonial in light of *Davis*. But the State did not request a remand on this issue during the first appeal. Accordingly, we decline to consider this issue now and deny this portion of the State's motion for remand.

police the defendant had assaulted her and had threatened to kill her if he caught her cheating on him. *Giles,* 128 S.Ct. at 2681–82. The California Court of Appeals upheld the admission of this evidence, concluding that the defendant had forfeited his confrontation rights because he had committed the intentional killing that rendered the victim unavailable to testify. *Id.* at 2682. The California Supreme Court affirmed on the same grounds. *Id.*

The U.S. Supreme Court overturned the California Supreme Court decision. The Court held that the forfeiture-by-wrongdoing doctrine permits unconfronted testimony of a murder victim into evidence only if there is a showing that the defendant killed the declarant with the intent of preventing the declarant from testifying. *Id.* at 2684. Because the California courts failed to inquire into the defendant's intent in killing the victim, the U.S. Supreme Court vacated the decision. *Id.* at 2693. The Supreme Court remanded the case to the California courts to consider evidence of the defendant's intent. *Id.*

The State argues that a remand for an evidentiary hearing on the issue of Her's intent is necessary to reach a determination of whether Her forfeited his confrontation rights under *Giles.* Her objects to a remand for two reasons. First, Her argues that a remand is unnecessary because *Giles* did not announce a new standard. Second, Her argues that even if *Giles* did change the law regarding application of the forfeiture-by-wrongdoing doctrine, the evidence in the record is sufficient for this court to decide as a matter of law that Her did not forfeit his right to confront Vang.

We consider each of Her's arguments in turn.

### A.

■ Her argues that remand to the district court is not necessary because *Giles* did not change the law.[4] Specifically, Her contends that "federal and Minnesota caselaw put the [S]tate on notice" of its obligation to prove that a desire to silence Vang motivated Her to murder Vang. We disagree.

■ A remand to allow the State an opportunity to develop the factual record on an issue is appropriate when, at the time of trial, the law did not require the State to establish a factual record on the issue in question. *State v. Wright (Wright II ),* 726 N.W.2d 464, 482 (2007). As we explained in *Her I,* under the law in Minnesota and elsewhere at the time of Her's trial, the forfeiture-by-wrongdoing doctrine did not depend on a showing that a desire to silence the victim motivated the killing in cases where the unavailable witness was also the murder victim.[5] *See Her I,* 750 N.W.2d at 270–74.

We applied the forfeiture-by-wrongdoing doctrine in this manner in *State v. Langley,* 354 N.W.2d 389 (Minn.1984), and the State relied on *Langley* in the district court to argue that Her forfeited his right to confront Vang. In *Langley,* a jury found the defendant guilty of drowning his wife in the bathtub. 354 N.W.2d at 391. At trial, the State introduced a variety of hearsay statements of the wife alleging abuse by the defendant and the defendant

---

4. Her made this argument notwithstanding the concession in his brief that *Giles* "clarified the law on the forfeiture-by-wrongdoing exception as it relates to a defendant's right to confrontation."

5. We noted that the rule we followed in Minnesota in murder cases was the same as

that followed in other states, including California, and we specifically referred to the California Supreme Court's decision in *Giles. Her I,* 750 N.W.2d at 271 (citing *People v. Giles,* 40 Cal.4th 833, 55 Cal.Rptr.3d 133, 152 P.3d 433, 443 (2007), *rev'd sub nom. Giles v. California,* —— U.S. ——, 128 S.Ct. 2678, 171 L.Ed.2d 488 (2008)).

objected on Confrontation Clause grounds. *Id.* at 396. We held that the statements were properly admitted, explaining that the defendant "cannot invoke his sixth amendment rights as a shield to protect him from the ramifications of having murdered his wife ... because the evidence is strong that he has been the instrument of the denial of his own right of cross-examination." *Id.* at 400.

Her argues that the State should not have limited its evidence on the forfeiture issue based on *Langley*. According to Her, the State's reliance on *Langley* was misplaced because *Langley* was an "anomaly" among our forfeiture decisions. But we rejected the argument that *Langley* was out of step with our forfeiture law in *Her I* when this argument was offered by the concurrence. *Her I*, 750 N.W.2d at 299 (Page, J., concurring) (arguing that "*Langley* is an anomalous outlier" and citing *State v. Fields*, 679 N.W.2d 341, 347 (Minn.2004); *State v. Peirce*, 364 N.W.2d 801, 807–08 (Minn.1985); *State v. Hansen*, 312 N.W.2d 96, 103–105 (1981), *abrogation on other grounds recognized by State v. Bobadilla*, 709 N.W.2d 243 (Minn.2006); *State v. Olson*, 291 N.W.2d 203, 207 (Minn. 1980); *State v. Black*, 291 N.W.2d 208, 214 (Minn.1980), *abrogation on other grounds recognized by State v. Jones*, 556 N.W.2d 903 (Minn.1996)). Her cites these same cases in advancing his argument that *Langley* did not govern what the State needed to prove on the forfeiture question. We addressed these cases in *Her I* and found them inapposite because they do not address application of the forfeiture-by-wrongdoing doctrine in the context of a murder case where the out of court declar-

ant was also the murder victim. *Her I*, 750 N.W.2d at 270 & n. 11 (distinguishing cases cited by Her and the concurrence from murder cases for purposes of forfeiture analysis).[6] At the time the parties litigated the forfeiture question in the district court, *Langley* was controlling authority in Minnesota on the application of the forfeiture-by-wrongdoing doctrine in a case where the murder victim was also the unavailable witness.

In *Langley*, we did not require any showing that the defendant intended to prevent his wife from testifying against him. 354 N.W.2d at 400. Indeed, as Her pointed out at oral argument, there was evidence in *Langley* that, approximately four years before the murder, the defendant had threatened to murder the victim if she reported his abuse to the police. The State referenced this threat in its brief in *Langley*, but we did not even discuss it in our opinion. Evidence of this type of threat would be relevant evidence under the standard announced in *Giles*, 128 S.Ct. at 2693 (noting that "threats of abuse, intended to dissuade the victim from resorting to outside help would be highly relevant to this inquiry"). The absence of any mention of the threat in our opinion, however, provides further support for our conclusion in *Her I* that under Minnesota law, application of the forfeiture-by-wrongdoing doctrine did not depend on an assessment of the defendant's motive for the murder. *Langley*, 354 N.W.2d at 400; *Her I*, 750 N.W.2d at 274.

In *Her I*, we adhered to *Langley* in concluding that Her forfeited his confrontation claim. *Her I*, 750 N.W.2d at 274–75.

---

**6.** Her also cites dicta from *State v. Wright* (*Wright I*) for the proposition that intent to silence a witness is required for a court to find forfeiture. *See* 701 N.W.2d 802, 815 (Minn.2005), *vacated and remanded for reconsideration in light of Davis v. Washington*, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). Like all of the other cases upon which Her relies, *Wright I* is inapposite to the issue because it is not a murder case in which the unavailable witness is also the murder victim, but a witness-tampering case where the defendant was facing charges of assault and illegal possession of a firearm.

Our precedent required a showing of intent before the forfeiture-by-wrongdoing doctrine applied in the murder context. But unlike *Giles*, the relevant intent under our precedent, and that of other states including California, was the defendant's intent to kill the victim. *See id.* at 269–74. *Giles* requires a different type of intent. *Giles* requires not only that the defendant intend to kill the victim, but also that the defendant killed the victim with the intent of preventing the victim from testifying. *Giles*, 128 S.Ct. at 2684. This is a change in the law from *Langley*, and we therefore reject Her's argument that *Giles* did not sufficiently change the law regarding forfeiture in Minnesota to warrant a remand. Because our law did not require an examination of Her's motive for killing Vang, the State cannot be said to have had the opportunity to develop a factual record regarding Her's intent when it was litigating the applicability of the forfeiture-by-wrongdoing doctrine at the district court. *See Wright II*, 726 N.W.2d at 482 (concluding that, in light of the intervening decisions in *Crawford* and *Davis*, the State had not waived the opportunity to develop a further factual record on the issue of forfeiture).

## B.

■ We turn next to Her's alternative argument that even if *Giles* changed the law, the record establishes that the State cannot meet the standard articulated in *Giles*, and that therefore a remand is not necessary.[7] After *Giles*, the forfeiture-by-wrongdoing doctrine allows the introduc-

tion of a murder victim's unconfronted testimonial statements if the victim was murdered to prevent the victim from being a witness. 128 S.Ct. at 2684. We have recognized that issues of intent, such as the *Giles* intent-to-silence requirement, are inherently fact-driven. *See, e.g., State v. Fratzke*, 354 N.W.2d 402, 409 (Minn.1984) (stating that "intent is primarily a question of fact"). The district court is the best place in which to undertake the inherently fact-driven intent analysis that *Giles* requires.[8]

But Her contends that we need not remand the question of his intent to the district court. Specifically, Her argues that the record establishes that he did not kill Vang because he wanted to keep her from being a witness against him. For example, Her notes that the State argued at trial that Her murdered Vang because "he didn't want to live his life without her." Her also argues that the additional evidence the State seeks to offer on remand, including evidence relating to a domestic assault charge pending at the time of Vang's murder and Vang's order for protection, is insufficient as a matter of law to satisfy *Giles*.

The State responds that remand is necessary and argues that an intent-to-silence does not have to be the sole motive for the murder. The State relies on federal appellate decisions interpreting Federal Rule of Evidence 804(b)(6) (2008), which have held that to show forfeiture under Rule 804(b)(6), the State must show that the

7. The State does not argue that we can rule as a matter of law under *Giles* that the facts already established in *Her I* are sufficient to find forfeiture-by-wrongdoing and thus, we do not address that question.

8. Although we ruled as a matter of law in *Her I* that forfeiture-by-wrongdoing applied, this was possible because, under the old standard, once the prosecution had established by a

preponderance of the evidence that the defendant was responsible for the victim's death, the out-of-court statements of the victim could be admitted under the forfeiture-by-wrongdoing exception. *See Her I*, 750 N.W.2d at 274–75. No factually intensive findings regarding motive were necessary. The rule announced by the *Giles* court requires additional factual findings not made by the district court.

defendant was motivated only *in part* to silence the victim. *See, e.g., United States v. Gray*, 405 F.3d 227, 242 (4th Cir.2005) ("Although the Rule requires that the wrongdoing was *intended* to render the declarant unavailable as a witness, we have held that a defendant need only intend 'in part' to procure the declarant's unavailability."); *United States v. Dhinsa*, 243 F.3d 635, 654 (2d Cir.2001) ("The government need not, however, show that the defendant's sole motivation was to procure the declarant's absence; rather, it need only show that the defendant 'was motivated *in part* by a desire to silence the witness.'" (internal citation omitted)); *United States v. Houlihan*, 92 F.3d 1271, 1279 (1st Cir. 1996) ("Moreover, it is sufficient in this regard to show that the evildoer was motivated *in part* by a desire to silence the witness; the intent to deprive the prosecution of testimony need not be the actor's *sole* motivation."). Her does not discuss these cases in his brief nor does he directly respond to the State's argument that an intent-to-silence need not be the sole motive for the murder. But implicit in Her's argument—that the State's evidence as to his intent is insufficient as a matter of law—is the suggestion that *Giles* requires that an intent-to-silence be the sole motive for the murder.

Because the State has not yet developed the factual record under the *Giles* rule, we conclude it would be premature for us to determine, at this stage, whether an intent-to-silence must be the sole motive for Vang's murder. *See In re McCaskill*, 603 N.W.2d 326, 327 (Minn.1999) (noting that appellate courts "decide only actual controversies and avoid advisory opinions"). This question will be better resolved with the benefit of a full evidentiary record developed on remand on the issue of Her's intent.[9]

Moreover, a remand comports with the Supreme Court's treatment of the forfeiture question in *Giles*. *See* 128 S.Ct. at 2680 ("Here, the state courts did not consider Giles' intent, which they found irrelevant under their interpretation of the forfeiture doctrine. They are free to consider intent on remand."). Remand is also consistent with our precedent. *See, e.g., State v. Warsame*, 735 N.W.2d 684, 696–97 (Minn.2007); *Wright II*, 726 N.W.2d at 482 ("Given the circumstances of this case and in particular, the state of the law interpreting the Confrontation Clause at the time of Wright's trial, we hold that the state has not waived the opportunity to present additional evidence to further develop a factual record on forfeiture."); *State v. Weekes*, 312 Minn. 1, 250 N.W.2d 590, 594–95 (1977) (remanding to district court for new evidentiary hearings in light of a U.S. Supreme Court decision changing the rules for finding attenuation of a Fourth Amendment violation).

■ The district court should resolve in the first instance whether the evidence the State proffers is insufficient, as Her contends, to satisfy the *Giles* standard. The Supreme Court's emphasis on the relevance of the domestic violence context to

---

9. The State also argues that full confrontation rights do not attach at a preliminary evidentiary hearing and therefore, that, on remand, the State should be able to introduce unconfronted testimonial statements that might not be admissible at trial in support of its argument that Her forfeited his confrontation claim. In support of this argument, the State cites three recent state supreme court decisions that have held that *Crawford* does not apply to pretrial suppression hearings. *See State v. Harris*, 998 So.2d 55, 56 (La.2008); *State v. Rivera*, 144 N.M. 836, 192 P.3d 1213, 1218 (2008); *State v. Woinarowicz*, 720 N.W.2d 635, 641 (N.D.2006). Her does not address this issue in his brief. For the same reason discussed in response to the issue the State raises about motive, we likewise decline to reach this issue at this stage of the proceedings.

the intent requirement should be helpful in making this determination. *Giles*, 128 S.Ct. at 2692–93. As the Supreme Court acknowledged in *Giles*, the context of domestic violence is relevant to the forfeiture question because "[a]cts of domestic violence often are intended to dissuade a victim from resorting to outside help, and include conduct designed to prevent testimony to police officers or cooperation in criminal prosecutions." *Id.* at 2693. Thus, "[e]arlier abuse, or threats of abuse, intended to dissuade the victim from resorting to outside help" could be helpful to the question of forfeiture, "as would evidence of ongoing criminal proceedings at which the victim would have been expected to testify." *Id.; see also State v. McLaughlin*, 265 S.W.3d 257, 272, 273 n. 10 (Mo.2008) (noting that *Giles* "clarified" "[t]he parameters of the forfeiture by wrongdoing doctrine" and upholding trial court's determination that defendant forfeited his right to confront the murder victim based on the defendant's prior acts of domestic violence committed "during the time that [the victim] was attempting to break from the relationship and had filed for orders of protection and sought protection from the police so that she could safely go from work to home.").

On remand, the State should be given the opportunity to establish, by a preponderance of the evidence, that Her forfeited

his confrontation claim by killing Vang with the intent to prevent her from testifying against him. If the State is able to prove that forfeiture occurred, the district court shall enter an order denying a new trial. If the State is unable to prove that forfeiture occurred, the district court shall reverse the conviction and order a new trial that does not include Vang's statements to Officer Baumhofer.

Remanded for further proceedings consistent with this opinion.

PAGE, Justice (dissenting).

I respectfully dissent. Our court rests its remand decision on the false conclusion that *Giles v. California*, —— U.S. ——, 128 S.Ct. 2678, 171 L.Ed.2d 488 (2008), announced a new rule of law changing the requirements of the forfeiture-by-wrongdoing doctrine. Based on that false conclusion, our court concludes that remand is necessary to give the State an opportunity to develop a factual record regarding Her's intent to procure Vang's unavailability.[1] Such a reading of *Giles* is without legal support and is absurd. The stark reality, which the court would like to ignore, is that *Giles* was not an announcement of a new rule or principle of law[2] but rather the rejection of various courts' attempts to create a murder exception, lacking any basis in common law, to the forfeiture-by-

1. A remand to allow the State an opportunity to develop the factual record on an issue is appropriate when at the time of trial the law did not require the State to establish a factual record on the issue in question. *State v. Wright (Wright II)*, 726 N.W.2d 464, 482 (2007). The State waives the right to raise an issue by failing to take advantage of an opportunity to build a factual record when it has ample opportunity to do so. *See Garza v. State*, 632 N.W.2d 633, 637 (Minn.2001). Having had the opportunity at trial in this case and having failed to raise the forfeiture issue then, the issue has been waived.

2. We have held that a Supreme Court holding constitutes a new rule of law "if it 'breaks new ground,' 'imposes a new obligation on the States or the Federal Government,' or was not '*dictated* by precedent existing at the time the defendant's conviction became final.'" *O'Meara v. State*, 679 N.W.2d 334, 339 (Minn. 2004), *abrogation recognized by* (quoting *Graham v. Collins*, 506 U.S. 461, 467, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993)). The Court's holding in *Giles* did not "break[] new ground" or "impose[] a new obligation on the state, or federal government" and was "dictated by precedent existing at the time the defendants conviction became final." *See id.*

wrongdoing doctrine. Any question on this point was answered by the *Giles* Court itself when it said, "We decline to approve an exception to the Confrontation Clause unheard of at the time of the founding or for 200 years thereafter. The judgment of the California Supreme Court is vacated." *Giles*, 128 S.Ct. at 2693.

To be clear, in *Giles*, the United States Supreme Court noted that since the 1600s the forfeiture-by-wrongdoing doctrine has permitted "the introduction of statements of a witness who was 'detained' or 'kept away' by the 'means or procurement' of the defendant." *Id.* at 2683. The Court further noted that "[t]he manner in which the rule [has been] applied makes plain that unconfronted testimony would *not* be admitted without a showing that the defendant intended to prevent a witness from testifying." [3] *Giles*, 128 S.Ct. at 2684. The Court concluded that in cases in which the evidence suggested that the defendant had caused a person to be absent, but had not done so to prevent the person from testifying, the testimony was excluded unless another exception applied. *Id.* at 2684. The Court explained:

In sum, our interpretation of the common-law forfeiture rule is supported by (1) the most natural reading of the language used at common law; (2) the absence of common-law cases *admitting* prior statements on a forfeiture theory when the defendant had not engaged in conduct designed to prevent a witness from testifying; (3) the common law's uniform exclusion of unconfronted inculpatory testimony by murder victims (except testimony given with awareness of impending death) in the innumerable cases in which the defendant was on trial for killing the victim, but was not shown to have done so for the purpose of preventing testimony; (4) a subsequent history in which the dissent's broad forfeiture theory has not been applied. The first two and the last are highly persuasive; the third is in our view conclusive.

*Id.* at 2688.[4]

Notwithstanding the fact that for over 400 years the forfeiture-by-wrongdoing doctrine has required a showing that the defendant intended to procure the witness's absence for the purpose of preventing the witness from testifying, our court

---

3. A witness having been "detained by the means or procurement of the prisoner," provided a basis to read testimony previously given at a coroner's inquest. *Lord Morley's Case*, 6 How. St. Tr. 769, 770–71 (H.L.1666); *Queen v. Scaife*, 117 Q.B. 238, 242, 117 Eng. Rep. 1271, 1273 (K.B.1851) ("kept away"); *Harrison's Case*, 12 How. St. Tr. 833, 851 (H.L.1692) ("made him keep away"); *see also Motes v. United States*, 178 U.S. 458, 471–74, 20 S.Ct. 993, 44 L.Ed. 1150 (1900) (holding that it would not be "consistent with the [Confrontation Clause] to permit the deposition or statement of an absent witness (taken at an examining trial) to be read at the final trial, when it does not appear that the witness was absent by the suggestion, connivance or procurement of the accused."); *Reynolds v. United States*, 98 U.S. 145, 158, 25 L.Ed. 244 (1879) (holding that when a witness is absent by the defendant's "wrongful procurement,"

the defendant "is in no condition to assert that his constitutional rights have been violated" if "their evidence is supplied in some lawful way.").

4. The Federal Rules of Evidence provide further evidence, if any is needed, that *Giles* was simply a reaffirmation of the common law forfeiture-by-wrongdoing doctrine. In 1997, the Supreme Court approved a Federal Rule of Evidence, entitled "Forfeiture by wrongdoing," which applies only when the defendant "engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." Fed. R.Evid. 804(b)(6). The Court described 804(b)(6) as a rule "which codifies the forfeiture doctrine." *Davis v. Washington*, 547 U.S. 813, 833, 126 S.Ct. 2266, 165 L.Ed.2d 224, (2006).

still insists that at the time of *State v. Her* (*Her I* ), 750 N.W.2d 258 (2008), the "forfeiture-by-wrongdoing doctrine did not depend on a showing that desire to silence the victim motivated the killing in cases where the unavailable witness was also the murder victim." That insistence cannot credibly be maintained. The Supreme Court is charged with the task of interpreting the Federal Constitution and our court's misapplication of the forfeiture-by-wrongdoing doctrine in one case, *State v. Langley*, 354 N.W.2d 389 (Minn.1984), could not and did not create a different constitutional standard for Minnesota as opposed to the rest of country. *See Webster v. Reprod. Health Servs.*, 492 U.S. 490, 518, 109 S.Ct. 3040, 106 L.Ed.2d 410 (1989) (holding that apart from a constitutional amendment, the United States Supreme Court "is the only body able to make needed changes" to the Constitution).

Yet, in its decision today, our court still fails to acknowledge that *Langley* was simply a perversion of the forfeiture doctrine crafted for unknown and unexplained reasons to make an end run around the Confrontation Clause. While our *Langley* decision speaks for itself, that is all it does.

As noted in my concurrence in *Her I*, in the years between *Langley* and *Her I*, our court did not cite or otherwise follow *Langley's* forfeiture-by-wrongdoing approach. *See Her I*, 750 N.W.2d at 298–99 (Page, J., concurring).[5] Instead, every case before *Langley* and every case after *Langley*, with the notable exception of *Her I*, followed the approach reaffirmed by the Supreme Court in *Giles*.[6] *Langley* cannot be said to be anything other than an anomalous outlier. Our court's reliance on *Langley* in *Her I* for the existence of an unwritten "murder exception" to the Confrontation Clause was absurd then, and our court's insistence that until *Giles* Minnesota's Confrontation Clause standard was somehow different than the rest of the country is equally absurd now. Having failed to raise or establish at trial Her's intent to prevent Vang from being a witness at trial, the State is not entitled to a remand for a second bite at the apple.

ANDERSON, PAUL H., Justice (dissenting).

· I join in the dissent of Justice Page.

---

5.  *See, e.g., Wright II*, 726 N.W.2d at 475–76; *State v. Fields*, 679 N.W.2d 341, 347 (Minn. 2004); *State v. Byers*, 570 N.W.2d 487, 494–95 (Minn.1997); *State v. Peirce*, 364 N.W.2d 801, 807–08 (Minn.1985); *State v. Hansen*, 312 N.W.2d 96, 103–105 (1981), *abrogation on other grounds recognized by State v. Bobadilla*, 709 N.W.2d 243, 248 (Minn.2006); *State v. Olson*, 291 N.W.2d 203, 206–07 (Minn.1980); *State v. Black*, 291 N.W.2d 208, 213–14 (Minn.1980), *abrogation on other grounds recognized by State v. Jones*, 556 N.W.2d 903, 909 (Minn.1996). Interestingly, in *Her I*, our court recognized that with the exception of murder cases, application of the forfeiture-by-wrongdoing doctrine in Minnesota required a showing that the defendant intended to procure the absence of the witness. 750 N.W.2d at 270 (holding that *Wright II* and similar cases are not controlling because "imposing the additional motive ele-

ment [in murder cases] is inconsistent with the equitable notions underlying the forfeiture-by-wrongdoing doctrine").

6.  In addition to the Minnesota cases cited above, *see also United States v. Houlihan*, 92 F.3d 1271, 1279 (1st Cir.1996); *United States v. Thevis*, 665 F.2d 616, 630 (5th Cir.1982), *superseded by rule on different grounds*, Fed. R.Evid. 804(b)(6), as recognized in *United States v. Zlatogur*, 271 F.3d 1025, 1028 (11th Cir.2001); *United States v. Carlson*, 547 F.2d 1346, 1359–60 (8th Cir.1976); *People v. Moreno*, 160 P.3d 242, 247 (Colo.2007); *Devonshire v. United States*, 691 A.2d 165, 168 (D.C. 1997); *People v. Stechly*, 225 Ill.2d 246, 312 Ill.Dec. 268, 870 N.E.2d 333, 348–53 (2007) (plurality opinion); *Commonwealth v. Edwards*, 444 Mass. 526, 830 N.E.2d 158, 165–70 (2005); *State v. Romero*, 141 N.M. 403, 156 P.3d 694, 701–03 (2007).

ANDERSON, PAUL H., Justice (dissenting).

I join in the dissent of Justice Page, but I write separately because I see the point of disagreement between the majority and the dissent in a slightly different way. At its core, the disagreement between the majority and the dissent is over what it means to announce a new rule or principle of law. The majority takes the position that when the United States Supreme Court interprets the United States Constitution to grant broader protections than we have granted, the Supreme Court's interpretation represents a new principle of law. I disagree. I would characterize our interpretation of the U.S. Constitution in *State v. Langley*, 354 N.W.2d 389 (Minn. 1984), as having been a misinterpretation, and characterize the Supreme Court's interpretation in *Giles v. California*, —— U.S. ——, 128 S.Ct. 2678, 171 L.Ed.2d 488 (2008), as a correction of that misinterpretation, not as the announcement of a new principle of law. The Supreme Court is, after all, the final interpreter of the U.S. Constitution. That said, I would not go as far as Justice Page to call the majority's characterization absurd, nor would I characterize our misinterpretation of the U.S. Constitution in *Langley* as a perversion.