*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0226**

Gary Cornelius Whitehurst, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed September 12, 2016
Affirmed
Johnson, Judge**

Ramsey County District Court
File No. 62-CR-13-4301

Cathryn Middlebrook, Chief Appellate Public Defender, Davi E. Axelson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Peter R. Marker, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Considered and decided by Halbrooks, Presiding Judge; Johnson, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**JOHNSON**, Judge

In 2013, a Ramsey County jury found Gary Cornelius Whitehurst guilty of second-degree criminal sexual conduct based on evidence that he touched the vaginal area of a

five-year-old girl. He did not pursue a direct appeal. In 2015, Whitehurst petitioned for postconviction relief, arguing that the trial court erred when it overruled his hearsay objections to the testimony of two of the state's witnesses. The postconviction court denied relief. We conclude that the postconviction court did not err by reasoning that the challenged evidence was admissible as non-hearsay pursuant to rule 801(d)(1)(B) of the Minnesota Rules of Evidence. Therefore, we affirm.

## FACTS

In November 2012, I.M., a five-year-old girl, lived in the lower unit of a duplex in Minneapolis with her mother, C.M., and C.M.'s mother, L.M. During the evening of November 18, 2012, C.M. and L.M. went out to play bingo. They left I.M., her two younger siblings, and L.M.'s ten-year-old son in the care of a family friend, A.R., who lived in the upper unit of the duplex and was caring for his two-year-old daughter. Four other adult men lived in the upper unit at that time, including J.M., who is an uncle of C.M., and Whitehurst, who is a cousin of L.M.

Approximately two days later, I.M. disclosed to L.M. that Whitehurst had touched or rubbed her vaginal area while C.M. and L.M. were out playing bingo. L.M. told C.M. that she should speak with I.M. C.M. spoke with I.M. and received the same information. C.M. and L.M. contacted police the next day.

In June 2013, the state charged Whitehurst with one count of second-degree criminal sexual conduct, in violation of Minn. Stat. § 609.343, subd. 1(a) (2012). Before trial, Whitehurst sought leave to admit evidence that might prove that the alleged crime was committed not by him but by some other person who was present in the upper unit that

evening. Specifically, Whitehurst sought to introduce evidence that J.M. had engaged in inappropriate sexual behavior toward C.M. when each was a child and that L.M.'s ten-year-old son had engaged in inappropriate sexual behavior toward I.M. approximately four years earlier. The trial court granted Whitehurst's motion to admit the proffered alternative-perpetrator evidence.

The case was tried in October 2013. In his opening statement, the prosecutor preemptively addressed the alternative-perpetrator issue by asking the jury to regard with caution "things that happened years ago regarding other individuals" and to pay close attention to the evidence of "what happened on November 18th and 19th of 2012." The prosecutor asked the jury to focus on the fact that they would not "hear any evidence that [I.M.] has said anyone other than the defendant touched her that night." Whitehurst's attorney, in her opening statement, mentioned that numerous persons were living in the upstairs apartment at that time and asked the jury to take note that J.M. and L.M.'s ten-year-old son had not provided statements during the investigation and would not be testifying at trial. Whitehurst's attorney stated that the jury would perceive inconsistencies in witnesses' testimony about the events that occurred before and after the evening in question.

The state called I.M. as its first witness. She testified that, while her mother and grandmother were away, Whitehurst touched her "private parts" inside her pajamas while he was sitting next to her on a couch, watching television in the living room. She also testified that A.R. was nearby but was not in the room when Whitehurst touched her. She further testified that Whitehurst's actions made her "mad."

The state next called C.M., who testified that I.M. seemed agitated for a couple of days after the bingo outing. C.M. testified that she noticed that I.M.'s vaginal area was red and irritated, and that I.M. said that it was itchy and that it hurt, but that I.M. also said that toilet paper was the reason. C.M. testified that I.M. later told her that, while she and L.M. were playing bingo, Whitehurst sat on the couch next to where I.M. was lying, said that he loved her and that she was "very, very beautiful," and touched her "private area," initially on top of the blanket, then on top of her underwear, and then inside her underwear. C.M. testified that I.M. told her "that he did it really hard, and that it really, really hurt her." The state then called L.M., who testified that, two days after she and C.M. had played bingo, I.M. told her that Whitehurst had "rubbed" her "private" "inside of her underwear" "really hard" while C.M. and L.M. were away. L.M. also testified that I.M. said that she did not talk about the incident earlier because she was afraid to tell anyone what had happened.

Whitehurst objected to C.M.'s testimony and L.M.'s testimony concerning I.M.'s statements about Whitehurst's conduct. Whitehurst's attorney argued, among other things, that the testimony consisted of inadmissible hearsay. The trial court overruled that objection on the ground that I.M.'s statements were prior consistent statements and, thus, admissible non-hearsay. *See* Minn. R. Evid. 801(d)(1)(B).

The state also called A.R. and a St. Paul police officer as witnesses. The defense called two witnesses: an investigator in the public defender's office and a Ramsey County child-protection worker. Whitehurst did not testify. The jury found Whitehurst guilty. The district court imposed a sentence of 36 months of imprisonment but stayed execution. Whitehurst did not file a direct appeal from his conviction and sentence.

4

In October 2015, with the assistance of counsel, Whitehurst petitioned for postconviction relief. In his petition, he argued that the trial court erred by overruling his hearsay objections to the testimony of C.M. and L.M. concerning I.M.'s prior statements. The postconviction court denied the petition on the ground that C.M.'s testimony and L.M.'s testimony was non-hearsay under rule 801(d)(1)(B) of the Minnesota Rules of Evidence. The postconviction court reasoned in the alternative that, even if the trial court had erred by overruling Whitehurst's objections, the admission of the testimony was harmless. Whitehurst appeals.

## D E C I S I O N

Whitehurst argues that the postconviction court erred by denying his petition. Specifically, Whitehurst argues that C.M.'s testimony and L.M.'s testimony contained inadmissible hearsay because the state did not satisfy two requirements of rule 801(d)(1)(B) and that the erroneous admission of the testimony was not harmless.

If a criminal offender does not pursue a direct appeal but later raises an issue of procedural error in a postconviction proceeding, the postconviction action "is substantially similar in scope to a direct appeal." *Deegan v. State*, 711 N.W.2d 89, 94 (Minn. 2006). If Whitehurst had raised a hearsay issue on direct appeal, we would have applied an abuse-of-discretion standard of review. *See State v. Nunn*, 561 N.W.2d 902, 906-07 (Minn. 1997). In general, we apply an abuse-of-discretion standard of review to a decision to grant or deny postconviction relief. *Miles v. State*, 840 N.W.2d 195, 200 (Minn. 2013). Thus, we apply an abuse-of-discretion standard of review in this appeal.

5

Hearsay evidence is defined as an out-of-court statement that is offered to prove the truth of the matter asserted in the statement. Minn. R. Evid. 801(c); *State v. Litzau*, 650 N.W.2d 177, 182-83 (Minn. 2002). Hearsay evidence is inadmissible as substantive evidence unless it is within an exception to the hearsay rule. Minn. R. Evid. 802; *State v. Greenleaf*, 591 N.W.2d 488, 502 (Minn. 1999). But some out-of-court statements are not considered hearsay. Minn. R. Evid. 801(d). For example, a prior statement by a witness that is consistent with the witness's trial testimony is considered non-hearsay and, thus, is admissible. Minn. R. Evid. 801(d)(1)(B). The applicable rule provides: "A statement is not hearsay if . . . [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . consistent with the declarant's testimony and helpful to the trier of fact in evaluating the declarant's credibility as a witness . . . ." *Id.*

An out-of-court statement may be admitted as non-hearsay pursuant to rule 801(d)(1)(B) only if the district court makes a threshold determination that the witness's credibility has been challenged. *State v. Fields*, 679 N.W.2d 341, 347-48 (Minn. 2004); *State v. Bakken*, 604 N.W.2d 106, 109 (Minn. App. 2000), *review denied* (Minn. Feb. 24, 2000). In addition, an out-of-court statement may be admitted as non-hearsay pursuant to rule 801(d)(1)(B) only if the statement is consistent with the witness's trial testimony. *Nunn*, 561 N.W.2d at 909; *Bakken*, 604 N.W.2d at 109. In this case, Whitehurst argues that C.M.'s testimony and L.M.'s testimony about I.M.'s prior out-of-court statements should have been excluded because these two requirements of rule 801(d)(1)(B) were not satisfied.

**A.**

Whitehurst first contends that C.M.'s testimony and L.M.'s testimony were not admissible pursuant to rule 801(d)(1)(B) because, he asserts, I.M.'s credibility was not challenged.

The purpose of rule 801(d)(1)(B) is to allow a party "'to enhance the credibility of a witness.'" *State v. Farrah*, 735 N.W.2d 336, 344 (Minn. 2007) (quoting 11 Peter N. Thompson, *Minnesota Practice – Evidence* § 801.01 (3d ed. 2001)). That purpose is not triggered, however, unless the credibility of the witness has been challenged. *See id.* Furthermore, "the [out-of-court] statement must bolster the witness' credibility with respect to that aspect of the witness' credibility that was challenged." *Nunn*, 561 N.W.2d at 909.

In this case, the trial court expressly considered whether I.M.'s credibility had been challenged and concluded that it had been, even though she had not explicitly been accused of lying. The trial court reasoned that "a lack of cross-examination of this witness about a specific topic doesn't necessarily mean that the witness's credibility on that issue hasn't been put into play." The trial court also reasoned that "the central issue in this case is [I.M]'s credibility when she says that the defendant was with her on the couch, [and] touched her privates under her pajamas." The trial court determined that I.M.'s credibility was being challenged based on Whitehurst's attorney's opening statement and on "the essence of the allegation." The postconviction court rejected Whitehurst's argument by reasoning that Whitehurst sought to discredit and impeach I.M. by suggesting in the opening statement and in cross-examination that another person sexually abused her.

7

The record reveals that the defense theory of the case was that someone else who was present in the upstairs apartment (specifically, J.M. or L.M.'s ten-year-old son) sexually abused I.M. that night. Whitehurst successfully persuaded the trial court to allow him to introduce alternative-perpetrator evidence. The defense strategy plainly was to convince the jury that I.M. either did not know the truth or did not tell the truth about the identity of the person who touched her vaginal area. The defense theory is inherently inconsistent with I.M.'s trial testimony that Whitehurst touched her vaginal area. Thus, the trial court did not abuse its discretion by ruling that I.M.'s credibility was challenged, even though Whitehurst's trial counsel did not explicitly accuse her of lying or of misperceiving events.

**B.**

Whitehurst also contends that C.M.'s testimony and L.M.'s testimony were not admissible pursuant to rule 801(d)(1)(B) because, he asserts, I.M.'s out-of-court statements were not consistent with her trial testimony.

Because the purpose of rule 801(d)(1)(B) is to allow a party to enhance the credibility of a witness, the rule does not apply if "a witness' prior statement contains assertions about events that have not been described by the witness in trial testimony." *Farrah*, 735 N.W.2d at 344 (citing Minn. R. Evid. 801(d)(1), 1989 comm. cmt.). This requirement is justified by the principle that "'the exception should not be the means to prove new points not covered in the testimony of the speaker.'" *Id.* (quoting 4 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 405 (2d ed. 1994)). In addition, admission under rule 801(d)(1)(B) is inappropriate if there are "inconsistencies [that]

8

directly affect the elements of the criminal charge." *Bakken*, 604 N.W.2d at 110. To be deemed consistent, however, the "trial testimony and the prior statement need not be identical" but, rather, need only be "substantially consistent." *State v. Zulu*, 706 N.W.2d 919, 924-25 (Minn. App. 2005).

In this case, the trial court stated on the record that I.M.'s prior statements, as described in C.M.'s testimony, were substantially consistent with I.M.'s trial testimony. The postconviction court determined that, "[w]ith respect to the elements of the offense, I.M.'s in-court and prior statements are entirely consistent." Whitehurst contends that C.M.'s testimony and L.M.'s testimony included details that were not included in I.M.'s trial testimony, such as Whitehurst's statement to I.M. that she was "very beautiful" and I.M.'s statement that she was afraid to tell anyone what Whitehurst had done. Contrary to Whitehurst's contention, the essence of I.M.'s prior out-of-court statements and the essence of her trial testimony are the same: that Whitehurst touched or rubbed her "private part" when she was lying on the couch while her mother and grandmother were out playing bingo. I.M. consistently described the nature of the conduct, the identity of the perpetrator, the location of the conduct, and the approximate time of the incident. The law is clear that statements do not need to be identical to be "consistent" for purposes of this rule. *Id.* The differences between I.M.'s out-of-court statements and her trial testimony are not the result of inconsistencies but, rather, the fact that her out-of-court statements were more extensive. *See id.* (affirming under rule 801(d)(1)(B) in criminal-sexual-conduct case despite inconsistencies in details of incidents). Thus, the trial court did not abuse its discretion by ruling that I.M.'s out-of-court statements were consistent with her trial testimony.

9

Before concluding, we note that Whitehurst filed a *pro se* supplemental brief. We may consider the *pro se* supplemental brief to the extent that it includes arguments that were presented to the postconviction court, but we may not consider it to the extent that it goes beyond the arguments that were presented to the postconviction court. *Davis v. State*, 784 N.W.2d 387, 391 (Minn. 2010). Whitehurst's *pro se* supplemental brief does not raise any issues that were presented to the postconviction court but not included in the brief prepared and filed by appellate counsel. Thus, we need not discuss any of the issues raised in his *pro se* supplemental brief.

In sum, the postconviction court did not abuse its discretion by reasoning that the trial court did not err when it overruled Whitehurst's hearsay objections. Accordingly, the postconviction court did not err by denying Whitehurst's petition for postconviction relief.

**Affirmed.**