2008-NMSC-056

192 P.3d 1213

**STATE of New Mexico, Plaintiff–Petitioner,**

v.

**Erica RIVERA, Defendant–Respondent.**

No. 30,542.

Supreme Court of New Mexico.

Sept. 9, 2008.

Gary K. King, Attorney General, Andrew S. Montgomery, Assistant Attorney General, Santa Fe, NM, for Petitioner.

Hugh W. Dangler, Chief Public Defender, J.K. Theodosia Johnson, Assistant Appellate Defender, Navin H. Jayaram, Assistant Appellate Defender, Santa Fe, NM, for Respondent.

## OPINION

BOSSON, Justice.

{1} In this appeal we conclude that the Sixth Amendment rights of an accused to confront and cross-examine witnesses at trial do not extend to pretrial hearings on a motion to suppress evidence. The Court of Appeals, relying on its earlier holding in *State v. Hensel,* 106 N.M. 8, 738 P.2d 126 (Ct.App.1987), reached a different conclusion, which we reverse. We remand to the Court of Appeals for further proceedings.

## BACKGROUND

{2} Defendant Erica Rivera moved to suppress the evidence against her, claiming it had been seized in violation of her rights under the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution. At the suppression hearing, Agent Perry, a federal drug enforcement agency (DEA) agent, testified to the following events which gave rise to Defendant's arrest and eventual prosecution.

{3} In December 2003, a box was shipped from Texas addressed to Defendant on a bus operated by a private carrier, the El Paso–Los Angeles Limousine Express Company (bus company). The box was to be delivered to Defendant in Albuquerque, but inadvertently it was sent to Denver, Colorado. After receiving approximately fifteen phone calls from a woman who identified herself as Defendant, a bus company employee in Denver became suspicious about the contents of the box and opened it. Inside the box, under a pillow, the employee found a tool box that contained plastic wrapped bundles that ap-

peared to be marijuana. The Denver employee called another bus company employee in Los Angeles who then called Agent Perry. Agent Perry, after hearing the Los Angeles employee's description of what the Denver employee had found, also concluded that the bundles likely contained marijuana.

{4} At Agent Perry's suggestion, the package was resealed and sent to Albuquerque. Agent Perry and another DEA agent went to the bus station in Albuquerque and met with the station manager. The station manager opened the package to verify its contents, and told Agent Perry that he was opening the box to verify its contents, although it is unclear if the station manager was acting on his own, or at Agent Perry's direction. Agent Perry confirmed that the box contained numerous bundles, which appeared to be consistent with marijuana. At some point, one of the bundles was sliced open. It is unclear if Agent Perry cut open the bundle or if one of the bus employees did it.

{5} The following morning, Defendant arrived at the station and took possession of the box. Eventually arrested, Defendant was charged with possession of marijuana with intent to distribute contrary to NMSA 1978, § 30–31–22(A)(1) (1990, prior to 2006 amendment), or possession of eight or more ounces of marijuana contrary to NMSA 1978, § 30–31–23(B)(3) (1990, prior to 2005 amendment). Significant to our inquiry, throughout this entire episode Agent Perry never attempted to obtain a search warrant. Agent Perry relied on the private action of the bus company employees who allegedly had discovered the marijuana on their own, as well as the belief that he had probable cause to seize the contents of the box, based upon his training and experience, to justify the absence of a warrant. Alleging constitutional violations, Defendant moved to suppress the marijuana contained in the box and seized by Agent Perry.

{6} At the suppression hearing, neither the Denver employee nor the Los Angeles employee appeared to testify. Instead, Agent Perry testified about the events that led to Defendant's arrest, based upon what he was told by the Los Angeles employee who, in turn, recounted to Agent Perry what

he had been told by the Denver employee. During Agent Perry's testimony, Defendant objected several times on both hearsay and Confrontation Clause grounds. The district court overruled both objections stating, "This is a suppression hearing; hearsay statements are admissible."

{7} After allowing Agent Perry to testify fully, the district court ruled that the box and its contents would be suppressed. The court first found that Agent Perry's actions constituted state action, and therefore, the search and seizure required a warrant absent some showing of an exception such as exigent circumstances. The court also noted that there were "numerous confrontational issues" because the State failed to identify either bus company employee.

{8} On appeal to the Court of Appeals, the State renewed its argument that Agent Perry's search was constitutionally reasonable because the box had been opened first by a private employee. *State v. Rivera*, 2007–NMCA–104, ¶¶ 11, 12, 142 N.M. 427, 166 P.3d 488. The Court of Appeals agreed that if no government actor was involved when the package was first opened in Denver, then Defendant had no reasonable expectation of privacy to that extent, and the Fourth Amendment would not be implicated. *Id.* ¶ 12; *see also United States v. Jacobsen*, 466 U.S. 109, 119, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984) ("The agent's viewing of what a private party had freely made available for his inspection did not violate the Fourth Amendment."); *State v. Murillo*, 113 N.M. 186, 188, 824 P.2d 326, 328 (Ct.App.1991) ("The courts of New Mexico, like other jurisdictions, have accepted the long-standing rule that the protections of the Fourth Amendment do not apply to private individuals acting for their own purposes." (footnote omitted)).

{9} The Court, however, did not stop there. Because only the State knew the identity of the bus company employees, the Court of Appeals concluded that the burden shifted to the State to prove, as a question of fact, that the box really was opened first by a private actor in Denver without any government involvement. *Rivera*, 2007–NMCA–104, ¶ 18, 142 N.M. 427, 166 P.3d 488. Relying on its earlier opinion in *Hensel*, 106 N.M.

8, 738 P.2d 126, the Court held that because neither the Denver nor the Los Angeles employee testified, the State could not meet its burden. *Rivera*, 2007–NMCA–104, ¶ 18, 142 N.M. 427, 166 P.3d 488. The Court affirmed the district court's suppression order and subsequent dismissal of the case. *Id.* ¶ 22.

## DISCUSSION

{10} In this appeal we review two issues. First, we consider whether the Court of Appeals erred as a matter of law when it concluded, based upon *Hensel*, that the protections of the Confrontation Clause applied to this suppression hearing as they would at trial. "Questions of admissibility under the Confrontation Clause are questions of law, which we review de novo." *State v. Dedman*, 2004–NMSC–037, ¶ 23, 136 N.M. 561, 102 P.3d 628. Second, we review whether the district court erred when it granted Defendant's motion to suppress. A ruling on a motion to suppress evidence presents a mixed question of law and fact. *State v. Garcia*, 2005–NMSC–017, ¶ 27, 138 N.M. 1, 116 P.3d 72. We review findings of fact using a substantial evidence review. *Id.* We review whether the laws were correctly applied to the facts de novo, viewing the facts in the light most favorable to the prevailing party. *Id.*

## The Protections of the Sixth Amendment Confrontation Clause Do Not Extend in the Same Manner to Suppression Hearings

{11} The legal question distills to whether an accused's Sixth Amendment right to confront witnesses against him applies at a suppression hearing in the same manner as at trial. Put another way, we inquire whether the State may use hearsay and double hearsay testimony at a suppression hearing to support the constitutional reasonableness of a search and seizure, and therefore the admissibility of contraband at trial, when that same hearsay testimony would likely not be admitted at trial. The Court of Appeals held that the Confrontation Clause does apply, even at a suppression hearing, when the admissibility of evidence rests on the determination of a "key issue," which, in this case, turns on whether the package was originally opened in Denver without any government

involvement. *Rivera*, 2007–NMCA–104, ¶ 18, 142 N.M. 427, 166 P.3d 488. In analyzing that holding, we examine the continuing viability of the *Hensel* opinion, but first we turn to an analysis of Confrontation Clause jurisprudence from this Court, the United States Supreme Court, and from other jurisdictions.[1]

{12} In *State v. Martinez*, this Court recently addressed a defendant's right to confront a witness at trial, when the witness' sole function was to establish a preliminary question of fact, pre-trial. 2007–NMSC–025, 141 N.M. 713, 160 P.3d 894. In *Martinez*, we did not distinguish between "key issues" and other types of issues bearing on the admissibility of evidence. Instead, we explained that "[t]he protections afforded by the Confrontation Clause do not extend to preliminary questions of fact." *Id.* ¶ 25; *see also State v. Granillo–Macias*, 2008–NMCA–021, 143 N.M. 455, 176 P.3d 1187, *cert. denied*, 2008–NMCERT–002, 143 N.M. 665, 180 P.3d 672 ("[B]ecause Defendant seeks only to cross-examine on preliminary questions of fact, the Confrontation Clause offers Defendant no protection.").

{13} Defendant does not point to any persuasive authority that would cause us to reverse our recent holding in *Martinez*, filed approximately one month before the Court of Appeals decided *Rivera*, but which is absent from that opinion. Instead, a review of both federal and state precedent reinforces our conclusion that the Confrontation Clause does not apply to preliminary questions of fact elicited at a suppression hearing.

{14} First, the United States Supreme Court has held that a defendant's right to confront witnesses against him is primarily a trial right, not a pretrial right. *Pennsylvania v. Ritchie*, 480 U.S. 39, 52, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) (plurality) ("[T]he right to confrontation is a trial right."); *Barber v. Page*, 390 U.S. 719, 725, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968) ("The right to confronta-

tion is basically a trial right."); *see also* 1 Nancy Hollander, Barbara E. Bergman, Melissa Stephenson & Theresa M. Duncan, *Wharton's Criminal Procedure* § 8:10, at 8–28 (14th ed.2007) ("At the federal level, the defendant's right to confront a witness, embodied in the Sixth Amendment of the Constitution, was early held not to apply to the preliminary hearing.... The right to confrontation is basically a trial right." (footnotes omitted)).

{15} The distinction follows from the difference in focus between pretrial hearings and trials on the merits. A trial focuses on the ultimate issue of an accused's guilt or innocence, whereas in a pretrial hearing the focus is generally on the admissibility of evidence. Thus, "the interests at stake in a suppression hearing are of a lesser magnitude than those in the criminal trial itself. At a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial." *United States v. Raddatz*, 447 U.S. 667, 679, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *Brinegar v. United States*, 338 U.S. 160, 173, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) ("There is a large difference between the two things to be proved, as well as between the tribunals which determine them, and therefore a like difference in the quanta and modes of proof required to establish them.").

{16} Because of the difference between suppression hearings and trials, "[t]he process due at a suppression hearing may be less demanding and elaborate than the protections accorded the defendant at the trial itself." *Raddatz*, 447 U.S. at 679, 100 S.Ct. 2406. Accordingly, the United States Supreme Court has repeatedly held that the state is not constitutionally required to produce an informant to testify at a suppression hearing. *McCray v. Illinois*, 386 U.S. 300, 313, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); *Cooper v. California*, 386 U.S. 58, 62 n. 2, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967). In *McCray*, the United States Supreme Court,

---

1. Plaintiff does not argue to this Court that the New Mexico Constitution, Article II, Section 14, provides an accused with any greater protection than the United States Constitution. Similarly, before both the district court and the Court of Appeals Defendant only referred generally to her rights of confrontation. Because Defendant did not preserve any separate argument under the New Mexico Constitution, we limit our review to cases construing the Confrontation Clause of the Federal Constitution. *See State v. Ochoa*, 2004–NMSC–023, ¶ 6, 135 N.M. 781, 93 P.3d 1286.

quoting the New Jersey Supreme Court with approval, instructed:

> We must remember also that we are not dealing with the trial of the criminal charge itself. There the need for a truthful verdict outweighs society's need for the informer privilege. Here, however, the accused seeks to avoid the truth. The very purpose of a motion to suppress is to escape the inculpatory thrust of evidence in hand, not because its probative force is diluted in the least by the mode of seizure, but rather as a sanction to compel enforcement officers to respect the constitutional security of all of us under the Fourth Amendment. If the motion to suppress is denied, defendant will still be judged upon the untarnished truth.

386 U.S. at 307, 87 S.Ct. 1056 (citation omitted).

{17} In a similar vein, the United States Supreme Court has held that out-of-court statements are admissible at a suppression hearing to prove authority to consent to search. *See United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). In *Matlock,* the Court noted that a district court may rely on out-of-court statements to prove consent so long as the court is "satisfied that the statements had in fact been made," and so long as "there is nothing in the record to raise serious doubts about the truthfulness of the statements themselves." *Id.* at 175, 94 S.Ct. 988. However, a district court is only required to consider out-of-court statements *"for whatever they might be worth* in resolving, one way or another, the issues raised at the suppression hearings." *Id.* at 176, 94 S.Ct. 988 (emphasis added).

{18} Nothing in the Supreme Court's recent pronouncements suggests that the Court has changed its interpretation of the Confrontation Clause. Instead, recent cases continue to focus on the protections afforded a defendant *at trial.* For example, in *Giles v. California,* —— U.S. ——, ——, 128 S.Ct. 2678, 2682, 171 L.Ed.2d 488 (2008), the Court noted that "[t]he [Sixth] Amendment contemplates that a witness who makes testimonial statements admitted against a defendant will ordinarily be present *at trial* for cross-examination, and that if the witness is unavailable,

his prior testimony will be introduced only if the defendant had a prior opportunity to cross-examine him." (Emphasis added.) Similarly, in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Court emphasized a defendant's right to confront a witness against him at trial. The Court concluded that, "[w]here testimonial evidence is at issue [at trial], the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Id.* at 68, 124 S.Ct. 1354.

{19} Recently, other states have rejected an interpretation of *Crawford* that would require confrontation of witnesses at pre-trial hearings. *See, e.g., People v. Felder,* 129 P.3d 1072, 1073 (Colo.Ct.App.2005) ("Nothing in *Crawford* suggests that the Supreme Court intended to alter its prior rulings allowing hearsay at *pretrial* proceedings, such as a hearing on a suppression motion challenging the sufficiency of a search warrant."); *Sheriff v. Witzenburg,* 122 Nev. 1056, 145 P.3d 1002, 1006 (2006) ("We conclude that the Sixth Amendment Confrontation Clause and *Crawford* do not apply to a preliminary examination."); *State v. Woinarowicz,* 720 N.W.2d 635, 641 (N.D.2006) ("In *Crawford,* the United States Supreme Court did not indicate it intended to change the law and apply the Confrontation Clause to pretrial hearings. .... The Sixth Amendment right to confrontation is a trial right, which does not apply to pretrial suppression hearings."); *State v. Rhinehart,* 153 P.3d 830, 834–35 (Utah Ct.App.2006) ("The Confrontation Clause pertains to a criminal defendant's right to confront and cross-examine the witnesses against the defendant at trial; it does not afford the right to confront and cross-examine witnesses at a preliminary hearing, and *Crawford* does not alter the Court's previous holdings with respect to this matter.").

{20} While this Court has not to this point considered *Crawford's* application pre-trial, in *Dedman,* 2004–NMSC–037, ¶¶ 26, 27, 136 N.M. 561, 102 P.3d 628, we analyzed *Crawford's* implications on a defendant's right to confront witnesses against him at trial. In that opinion, we concluded that the defendant did not have the right to cross-examine the

**841**

nurse who drew his blood sample and prepared a blood alcohol report that was admitted into evidence at trial. *Id.* ¶ 30. In conducting our analysis, we explained that the United States Supreme Court only intended to change the law regarding testimonial evidence introduced at trial, leaving other aspects of the law on confrontation unchanged. *Id.* ¶ 28 ("*Crawford* expressly distinguished between testimonial and non-testimonial hearsay evidence and applied the new rule only to testimonial evidence."). Thus, our recent statement in *Martinez*, 2007–NMSC–025, ¶ 25, 141 N.M. 713, 160 P.3d 894, that "[t]he protections afforded by the Confrontation Clause do not extend to preliminary questions of fact[,]" is consonant with both state and federal jurisprudence interpreting that clause of the federal Constitution.

{21} Despite this relatively uniform limitation on the right to confrontation at pretrial suppression hearings, the Court of Appeals chose to follow *Hensel*, an earlier Court of Appeals opinion to the contrary. *See Rivera*, 2007–NMCA–104, ¶ 19, 142 N.M. 427, 166 P.3d 488; *Hensel*, 106 N.M. 8, 738 P.2d 126. In *Hensel*, the State attempted to validate a warrantless search of the defendant's property through the testimony of an officer who relied on out-of-court statements to demonstrate that the defendant's mother had consented to the search. 106 N.M. at 10, 738 P.2d at 128. Because the evidence seized was admissible only if the mother had the authority to consent to the search—an "important fact[ ] . . . to be determined" in the words of the *Hensel* opinion—the Court of Appeals concluded that the defendant had a right to cross-examine his mother, even at a pre-trial suppression hearing. *Id.*

{22} In reaching this conclusion, the *Hensel* court departed from established Supreme Court precedent of the same era. As previously discussed, in cases decided before *Hensel* the United States Supreme Court authorized the use of out-of-court statements at a suppression hearing to prove consent to search, *see Matlock*, 415 U.S. at 175, 94 S.Ct. 988, and held that the Confrontation Clause did not bar the use of testimony derived from confidential informants to prove probable cause, *see McCray* 386 U.S. at 313, 87 S.Ct. 1056; *Cooper*, 386 U.S. at 62 n. 2, 87 S.Ct. 788. The holding of *Hensel* also departs from the more current jurisprudence construing the protections of the federal Confrontation Clause discussed earlier. In sum, the *Hensel* opinion does not reflect current confrontation clause jurisprudence and is of no current value to our courts. It is hereby overruled.

### The District Court Erred When it Relied on the Confrontation Clause to Suppress the Evidence

{23} This Court was called upon to review the narrow question of whether the protections of the Confrontation Clause extend to a suppression hearing. As discussed above, we conclude that they do not, and therefore the district court properly admitted Agent Perry's hearsay testimony at the suppression hearing. We remand to the Court of Appeals to decide the remaining issues presented to that Court but left undetermined in its opinion, including if deemed appropriate the possibility of a remand to the district court.

### CONCLUSION

{24} The Court of Appeals is reversed and this case is remanded to the Court of Appeals for proceedings consistent with this Opinion.

{25} **IT IS SO ORDERED.**

WE CONCUR: EDWARD L. CHÁVEZ, Chief Justice, PATRICIO M. SERNA, PETRA JIMENEZ MAES, and CHARLES W. DANIELS, Justices.