This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                  **NO. 29,570**

**JUAN GARCIA MURO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**Gary L. Clingman, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
James W. Grayson, Assistant Attorney General
Albuquerque, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Will O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**CASTILLO, Judge.**

Defendant appeals his conviction for second degree murder. He raises a single issue, challenging the admission of his taped confession. For the reasons that follow, we affirm.

**BACKGROUND**

Defendant was arrested on suspicion of murder pursuant to a warrant. He was subsequently taken to an interview room at the police station for questioning. The officer opened the interview by explaining that she was investigating the murder of Darrell Blagg. The officer proceeded with the *Miranda* warnings, including the standard advice that Defendant had the right to counsel. The officer then asked Defendant if he wanted to speak to her, and he answered affirmatively. Defendant then signed a waiver of rights statement, and the interview proceeded.

The officer explained that Defendant had been arrested for murder and intimidation of a witness, and asked Defendant what had happened. Defendant initially denied involvement. However, after the officer informed Defendant that she had a great deal of information implicating him in the crime, Defendant told her that a third party named Billy Kelly had murdered the victim. Defendant contended that his only actual involvement had been to sell the gun used to kill the victim and other guns belonging to the victim. When the officer explained that the evidence did not support his position, Defendant admitted that he had been at the house at the time of

the murder, and stated that he saw Billy Kelly shoot the victim. The officer then informed Defendant that a convenience store video showed Billy Kelly at the store at the time of the murder, and that witnesses had stated that Billy Kelly's car was not in the driveway at the time of the shooting.

After a pause Defendant asked when he could make a phone call, and indicated that he wanted to call his brother Adam. The officer indicated that he could call at that time, and asked if Defendant wished to call anyone else. In response Defendant said he wanted to call his sister because "I guess I am gonna need my lawyer for this one." The officer immediately asked, "Do you want a lawyer now? Is that what you're asking?" Defendant replied, "No. I need to have her call one."

The officer then retrieved Defendant's cell phone and left the interview room. Defendant proceeded to make a series of calls, the first of which reached an answering machine. Defendant then placed a call to his sister-in-law, told her that he had been arrested for murder, and asked her to inform Adam. Finally Defendant called his sister. After telling her that he had been arrested for murder, Defendant indicated that he had been at the scene and knew who did it, but that it was not him. A second officer, who had entered the room moments before, then asked Defendant if they could talk about it further. The first officer returned to the interview at about that time. Defendant told his sister that the officers wanted to talk and that his cell phone

3

had very little time remaining. Then Defendant hung up, and the interview resumed.

Defendant provided a brief summary of his story to the second officer. In response the officer reiterated that they knew Billy Kelly was not at the residence at the time of the shooting. Defendant then admitted shooting the victim and, for the remaining thirty minutes of the interview, proceeded to provide details about the shooting.

Below, Defendant filed a motion to suppress his statement to the police on grounds that the officers had impermissibly continued to question him after he had invoked his right to counsel. The district court found that Defendant had knowingly and voluntarily waived his rights, and that his reference to counsel in the course of the interview was "equivocal at best." The district court therefore concluded that the continued questioning was permissible, and denied the motion. This ruling is challenged on appeal.

**STANDARD OF REVIEW**

"A ruling on a motion to suppress evidence presents a mixed question of law and fact." *State v. Rivera*, 2008-NMSC-056, ¶ 10, 144 N.M. 836, 192 P.3d 1213. Generally speaking, we review factual findings under a substantial evidence standard, and we review de novo whether the district court correctly applied the law to the facts. *See id.* Because there is no dispute as to the underlying facts in this case, we review

4

the district court's ultimate determination de novo.

**DISCUSSION**

"In order to protect a defendant's right against self-incrimination, law enforcement officers must, before beginning questioning, inform a person in custody (1) of the right to remain silent, (2) of the prospect that any statement made may be used as evidence against him or her, and (3) of the right to an attorney." *State v. Bailey*, 2008-NMCA-084, ¶ 3, 144 N.M. 279, 186 P.3d 908. "However, any of those rights may be waived, provided the waiver is made voluntarily, knowingly and intelligently." *Id.* (internal quotation marks omitted). In this case it is undisputed that Defendant was fully advised, and that he waived his rights at the beginning of the interview. Subsequently however, Defendant claims to have invoked his right to counsel. The issue on appeal concerns the propriety of the questioning which continued thereafter.

Generally speaking, once a suspect has invoked his right to have counsel present, he is not subject to further interrogation until counsel has been made available to him. *Bailey*, 2008-NMCA-084, ¶ 9 (quoting *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981)). However, the suspect must clearly articulate his desire to have counsel present. *Id.* ¶ 10. "[O]fficers need not halt the questioning of a suspect who makes an equivocal request for counsel." *State v. Castillo-Sanchez*, 1999-NMCA-

5

085, ¶ 16, 127 N.M. 540, 984 P.2d 787 (discussing *Davis v. United States*, 512 U.S. 452, 459 (1994)).

In this case, the only statement that might be regarded as a request for counsel occurred when Defendant indicated that he wanted to call his sister because, "I guess I am gonna need my lawyer for this one." Defendant contends that this should be regarded as an unequivocal invocation of the right to counsel. We disagree.

Although we lack authority addressing the precise language at issue in this case, analogous statements have been evaluated. For example, a suspect's question, " I can ask for an attorney here?" was deemed "at best ambiguous" and was therefore not treated as an invocation of the right to counsel. *State v. Bravo*, 2006-NMCA-019, ¶ 17, 139 N.M. 93, 128 P.3d 1070. The questions, "Do I need an attorney?" and "Who can help me?" have been deemed similarly ambiguous. *State v. Barrera*, 2001-NMSC-014, ¶ 31, 130 N.M. 227, 22 P.3d 1177 (addressing the former question); *Castillo-Sanchez*, 1999-NMCA-085, ¶ 17 (addressing the latter question).

Perhaps the best example is found in *Bailey*; there, a suspect's statement, "I don't think I should say anything else without seeing a lawyer," was deemed equivocal on two levels. 2008-NMCA-084, ¶ 11. The prefatory "I don't think I should" language could have signified that the suspect was merely considering whether to demand a lawyer, and the "anything else" language created ambiguity as

6

to the topical scope of the intended limitation. *Id.* The same ambiguities are presented in this case. The prefatory "I guess" language "could reasonably have been interpreted to mean that he was considering whether he needed a lawyer but had not yet decided to demand one." *Id.* And in light of the "for this one" language, the officer could have been "uncertain whether Defendant did not want to talk about the details of . . . the immediate topic of discussion" (ie, the fact that the police had evidence indicating that Billy Kelly was not the shooter), "or whether he referred to any further discussion of any kind." *Id.* By analogy, therefore, we conclude that Defendant's statement was insufficiently clear to convey to the officer that he wanted an attorney.

In this context, when an equivocal request is made, officers need not stop to seek clarification. *Castillo-Sanchez*, 1999-NMCA-085, ¶ 16. As a result, the officer was under no obligation to seek clarification in this case. Nevertheless, immediately after Defendant referred to counsel the officer observed "good police practice," *Bailey*, 2008-NMCA-084, ¶ 11, by asking, "Do you want a lawyer now? Is that what you're asking?" In reply Defendant stated, "No. I need to have [my sister] call one." Defendant contends that this rectified the preceding ambiguity and should be deemed an effective invocation of the right to counsel, such that the subsequent questioning was impermissible. Once again, we disagree.

As previously stated, officers are only required to cease questioning when a clear, unequivocal request for an attorney is made. *Castillo-Sanchez,* 1999-NMCA-085, ¶ 16. Like his preceding statement, Defendant's response to the officer's inquiry did not clarify any request for an attorney, principally because he answered "No." And although Defendant followed this denial with a statement of intent to have his sister call a lawyer, he gave no indication when the assistance of counsel was desired. His comment could therefore have reasonably been understood to reflect an intention to obtain counsel at some indeterminate point in the future.

Nor did Defendant's ensuing course of conduct indicate that he was requesting an attorney. *See generally id.* at ¶17 (looking at subsequent conduct in connection with an ambiguous statement). Although Defendant was immediately provided his cell phone, he made several phone calls to other individuals before calling his sister, and even then he made no reference to counsel, despite having ample opportunity to do so. Under such circumstances, Defendant's ambiguous statements cannot be regarded as an unequivocal invocation of the right to counsel.

In light of the foregoing considerations, the officers' continued questioning was not improper. We therefore conclude that the taped confession was properly admitted at trial.

**CONCLUSION**

For the foregoing reasons, we affirm.

**IT IS SO ORDERED.**

_____
**CELIA FOY CASTILLO, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**JONATHAN B. SUTIN, Judge**