# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2014-NMSC-016

Filing Date: June 5, 2014

Docket No. 33,938

STATE OF NEW MEXICO,

Plaintiff-Petitioner,

v.

GREGG CROCCO,

Defendant-Respondent.

ORIGINAL PROCEEDING ON CERTIORARI
Louis P. McDonald, District Judge

Gary K. King, Attorney General
Yvonne Marie Chicoine, Assistant Attorney General
Santa Fe, NM

for Petitioner

Anthony James Ayala
Albuquerque, NM

for Respondent

## OPINION

**DANIELS, Justice.**

{1}     Defendant Gregg Crocco has appealed his conviction for aggravated driving while under the influence of alcohol (aggravated DWI), claiming that his previous attorney provided constitutionally inadequate assistance of counsel by failing to file a motion to suppress evidence resulting from a warrantless police entry into the house of an absent third party, which Defendant had entered shortly before his arrest. We deny Defendant's ineffective assistance of counsel claim because the record in this direct appeal fails to establish a prima facie showing that the police entry into another person's house violated Defendant's own reasonable expectation of privacy.

1

## I.    FACTUAL AND PROCEDURAL BACKGROUND

**{2}**    One evening in 2009, Andrew Ayala and his sister heard a vehicle strike something outside their house in Rio Rancho. Startled, Ayala looked outside and saw an unfamiliar man, Defendant, get out of a green Ford Explorer and approach his house. Ayala went to investigate, but before he reached his front door Defendant opened the unlocked door and staggered a few steps inside. Ayala stopped Defendant to ask him what he was doing and noticed that he smelled of alcohol. Defendant appeared scared and immediately retreated from the house without saying anything. Ayala asked Defendant not to drive and offered to call somebody for him, but Defendant returned to his Explorer and drove erratically down the street. After noticing that Defendant's Explorer apparently had run into and damaged the ornamental wishing well in his front yard, Ayala went back into his house and called 911 to report the incident.

**{3}**    Nine minutes after receiving a call from dispatch, an officer identified a vehicle matching the description of the green Ford Explorer parked in front of a house one street over from Ayala's house. The officer noted that the hood was warm to the touch and that there was an almost empty, pint-size bottle of vodka lying on the back seat. When backup assistance arrived, the officer conducted a registration inquiry and learned that the owner of the Explorer was Gregg Crocco of Corrales, New Mexico. The officers decided to check out the Rio Rancho house where the Explorer was parked because of their concern that Defendant might be invading residences. There was no response when the officers rang the doorbell several times and knocked on the door. Concerned for the safety of the residents, the officers turned the unlocked front door knob, announced themselves as police officers, and entered the house.

**{4}**    Once the officers entered the house, they could see the legs of a person lying on a piece of furniture. One officer conducted a security sweep of the house while the other approached the couch where Defendant was sleeping and attempted to wake him. After the officer shook and yelled at Defendant, he woke up and began screaming profanities at the officer. Defendant was incoherent and disoriented, smelled of alcohol, and had bloodshot, watery eyes. The officer recognized the signs of intoxication and attempted to find out why Defendant was in the house. He asked if Defendant lived in the house or knew its occupants. Initially, Defendant refused to answer the question and stared at the officer while continuing to yell profanities. A few minutes later, the officer placed Defendant in handcuffs for safety reasons because he was concerned about Defendant's behavior and realized that Defendant would not cooperate. Ultimately, Defendant told the officer that the house belonged to someone named Michael, but Defendant did not tell them Michael's last name. The officer found mail on the kitchen counter addressed to a person named Michael. When the officer asked whether Defendant had permission to be in Michael's house, Defendant did not respond to the question and continued to yell profanities.

**{5}**    The officer removed Defendant from the house, and a DWI unit administered several field sobriety tests that indicated Defendant was impaired. Breath samples taken within three

hours of when Ayala saw Defendant driving the Explorer indicated that Defendant had a blood alcohol content exceeding the statutory limit for aggravated DWI, and Defendant was arrested and charged with aggravated driving under the influence pursuant to NMSA 1978, Section 66-8-102(D)(1) (2008, amended 2010) ("Aggravated driving while under the influence of intoxicating liquor or drugs consists of a person who . . . drives a vehicle in this state and has an alcohol concentration of sixteen one hundredths or more in the person's blood or breath within three hours of driving the vehicle . . . .").

**{6}** Defense counsel did not file a motion to suppress the evidence obtained as a result of the officers' warrantless entry into Michael's house. At his district court bench trial Defendant relied on the testimony of a friend, Sam Gutierrez, concerning the timing of events. Gutierrez testified that he and Defendant worked together in the ore refinery business and that on the night in question the two had returned from a four-day trip to Wyoming in Gutierrez's truck. Gutierrez explained that at around 5 p.m. he left Defendant at Michael's house and that Defendant's Explorer was not there. Defendant had asked Gutierrez to call Defendant's friend Frank so that he could get his Explorer back. After calling Frank, Gutierrez dropped Defendant off in front of Michael's house and left. Gutierrez did not provide any additional details about Defendant's relationship with Michael or whether Defendant had permission to be in Michael's house.

**{7}** In closing arguments, the State noted without objection that the officers had a "right to enter this residence where [Defendant] did not even live based on his previous behavior at the Ayalas'." The district court found that Defendant was guilty of aggravated DWI, that it was clear from testimony that Defendant was not the owner of the house where the officers found him, and that the officers had reasonable suspicion to approach him and develop probable cause for the DWI arrest.

**{8}** Between trial and sentencing, Defendant requested a change of counsel, which the district court approved. Defendant's new counsel filed a motion to grant a new trial on the basis of ineffective assistance of counsel because Defendant's counsel failed to file a suppression motion. At a hearing on the motion, the district court questioned Defendant's standing to challenge the warrantless entry. Defendant argued that he established standing because he identified the owner of the house to police and was not charged with breaking and entering. Defendant also requested an additional opportunity to present evidence so that the homeowner could testify about giving Defendant permission to be there. The district court noted that nothing in the existing record indicated that Defendant was a guest in the house, and Defendant's new counsel agreed. The district court denied the motion, finding that the officers' reasonable basis for entering the house was the safety of any potential occupants based on the totality of circumstances, and sentenced Defendant for a fourth DWI offense. *See* § 66-8-102(G) (2008) ("Upon a fourth conviction pursuant to this section, an offender is guilty of a fourth degree felony and . . . shall be sentenced to a term of imprisonment of eighteen months . . . .").

**{9}** Defendant appealed the judgment and sentence, and the Court of Appeals reversed,

3

concluding that Defendant made a prima facie showing of ineffective assistance of counsel based on his counsel's failure to file a motion to suppress evidence and on the lack of justification for the warrantless search under the emergency assistance doctrine. *See State v. Crocco*, 2013-NMCA-033, ¶¶ 12, 26, 296 P.3d 1224.

**{10}** This Court granted the State's petition for writ of certiorari to consider the State's arguments that the record failed to establish a prima facie case of ineffective assistance of counsel because Defendant failed to establish standing to challenge the warrantless entry and because the entry was lawful under the emergency assistance and exigent circumstances exceptions to the warrant requirement.

## II. STANDARD OF REVIEW

**{11}** We review the legal issues involved with claims of ineffective assistance of counsel de novo. *See State v. Tafoya*, 2012-NMSC-030, ¶ 59, 285 P.3d 604 ("Claims of ineffective assistance of counsel are reviewed de novo."); *State v. Neal*, 2007-NMSC-043, ¶ 15, 142 N.M. 176, 164 P.3d 57 (stating that the application of law to facts on a suppression issue is reviewed de novo). We defer to the findings of fact of the trial court if substantial evidence supports the court's findings. *See State v. Gonzales*, 2011-NMSC-012, ¶ 16, 150 N.M. 74, 257 P.3d 894 ("[W]e review any factual questions under a substantial evidence standard, looking at the evidence in the light most favorable to the prevailing party."). The same standard of review would apply had this come to us on appeal from a lower court's decision in a habeas corpus collateral attack on a conviction. *See Duncan v. Kerby*, 1993-NMSC-011, ¶ 7, 115 N.M. 344, 851 P.2d 466 ("When this Court addresses the propriety of a lower court's grant or denial of a writ of habeas corpus based on ineffective assistance of counsel, findings of fact of the trial court concerning the habeas petition are reviewed to determine if substantial evidence supports the court's findings.").

## III. DISCUSSION

**{12}** "Criminal defendants are entitled to 'reasonably effective' assistance of counsel under the Sixth Amendment" of the United States Constitution. *Tafoya*, 2012-NMSC-030, ¶ 59 (internal quotation marks and citation omitted). "For a successful ineffective assistance of counsel claim, a defendant must first demonstrate error on the part of counsel, and then show that the error resulted in prejudice." *State v. Arrendondo*, 2012-NMSC-013, ¶ 38, 278 P.3d 517 (internal quotation marks and citation omitted).

**{13}** Evidence of an attorney's constitutionally ineffective performance and any resulting prejudice to a defendant's case is not usually sufficiently developed in the original trial record. For this reason, a claim of ineffective assistance of counsel should normally be addressed in a post-conviction habeas corpus proceeding, which may call for a new evidentiary hearing to develop facts beyond the record, *see* Rule 5-802(E)(3) NMRA (allowing a court to hold evidentiary hearings in habeas corpus proceedings), rather than on direct appeal of a conviction as in the case before us. *See Arrendondo*, 2012-NMSC-013, ¶

38 ("The record is frequently insufficient to establish whether an action taken by defense counsel was reasonable or if it caused prejudice. Thus, instead of remanding the matter to the trial court, this Court prefers that these claims be brought under habeas corpus proceedings so that the defendant may actually develop the record with respect to defense counsel's actions.").

**{14}** "When an ineffective assistance claim is first raised on direct appeal, we evaluate the facts that are part of the record." *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61. "If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition, although an appellate court may remand a case for an evidentiary hearing if the defendant makes a prima facie case of ineffective assistance." *Id.* The burden of establishing a prima facie case requires Defendant to establish both elements of ineffective assistance, attorney error and prejudice. *Id.* A prima facie case is made if Defendant produces "enough evidence to allow the fact-trier to infer the fact at issue and rule in [Defendant's] favor." *Black's Law Dictionary* 1310 (9th ed. 2010).

**{15}** Without an adequate record, an appellate court cannot determine that trial counsel provided constitutionally ineffective assistance. *See Tafoya*, 2012-NMSC-030, ¶¶ 58-59 ("An appellate court will not second-guess counsel's strategic judgment unless the conduct does not conform with an objective standard of reasonableness." (internal quotation marks and citation omitted)). "[W]hen a plausible, rational strategy or tactic can explain the conduct of defense counsel," we cannot conclude that trial counsel erred. *State v. Paredez*, 2004-NMSC-036, ¶ 22, 136 N.M. 533, 101 P.3d 799; *see also Arrendondo*, 2012-NMSC-013, ¶ 38 ("Without such prima facie evidence, the Court presumes that defense counsel's performance fell within the range of reasonable representation."); *Roybal*, 2002-NMSC-027, ¶ 21 ("Indeed, if on appeal we can conceive of a reasonable trial tactic which would explain the counsel's performance, we will not find ineffective assistance."). There are many reasons Defendant's counsel may not have filed a suppression motion, including counsel's judgment that the motion would be groundless and unsuccessful. *See State v. Stenz*, 1990-NMCA-005, ¶ 7, 109 N.M. 536, 787 P.2d 455 ("A trial counsel is not incompetent for failing to make a motion when the record does not support the motion.").

**{16}** In order to suppress evidence obtained as a result of his warrantless arrest in another person's house, Defendant must show he had a legitimate expectation of privacy in the house. *See State v. Van Dang*, 2005-NMSC-033, ¶ 7, 138 N.M. 408, 120 P.3d 830 ("To establish standing [to challenge the constitutionality of a search], Defendant must demonstrate that he had a subjective expectation of privacy that society will recognize as reasonable."). This is because "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978) (internal quotation marks and citation omitted). "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Id.* at 134. "And since the exclusionary rule is an

attempt to effectuate the guarantees of the Fourth Amendment, it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections." *Id.*; *see also United States v. Rubio-Rivera*, 917 F.2d 1271, 1274 (10th Cir. 1990) ("A defendant may not challenge an allegedly unlawful search or seizure unless he demonstrates that his own constitutional rights have been violated.").

**{17}** We are aware that the United States Supreme Court has indicated a preference for avoiding use of the term "standing" in analyzing whether a defendant's substantive right to reasonable expectation of privacy has been violated. *Minnesota v. Carter*, 525 U.S. 83, 87-88 (1998) (holding that "in determining whether a defendant is able to show the violation of his (and not someone else's) Fourth Amendment rights, the definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing" (internal quotation marks and citation omitted)). But the Court has candidly acknowledged that "[t]he inquiry under either approach is the same" and that the results would not differ regardless of the label attached to the inquiry. *Rakas*, 439 U.S. at 139. We agree with the New Jersey Supreme Court that the "semantic difference" does not alter the reality that "the essential question remains whether the defendant . . . has Fourth Amendment interests sufficient to qualify him as a person aggrieved by an unlawful search and seizure." *State v. Alston*, 440 A.2d 1311, 1314-15 n.2 (N.J. 1981). Our cases have referred to the personal expectation of privacy issue in terms of a defendant's standing to challenge a state actor's constitutionally unreasonable conduct, and for convenience and consistency we will continue to use that short-hand reference to address the same underlying inquiry that all federal and state courts must undertake. *See, e.g.*, *Van Dang*, 2005-NMSC-033, ¶ 7 (addressing standing as a defendant's reasonable "expectation of privacy"); *State v. Villanueva*, ¶ 24, 1990-NMCA-051, 110 N.M. 359, 796 P.2d 252 ("In ascertaining the standing of an individual to challenge the propriety of a search, the focus is on the person's legitimate expectations of privacy.").

**{18}** We apply a two-part test in determining whether a search is an intrusion on a legitimate expectation of privacy: "First, we consider 'whether the individual's conduct demonstrated a subjective expectation of privacy.' Second, we consider 'whether society recognizes the individual's expectation of privacy as reasonable.'" *State v. Bomboy*, 2008-NMSC-029, ¶ 10, 144 N.M. 151, 184 P.3d 1045 (citation omitted). "We must examine the entire record surrounding the arrest, search and seizure to determine whether [the d]efendant proved a legitimate expectation of privacy." *Van Dang*, 2005-NMSC-033, ¶ 7. "Generally, one who owns, controls, or lawfully possesses property has a legitimate expectation of privacy." *Id.* (citing *Rakas*, 439 U.S. at 148). Although Defendant did not own the house, he still may have had a legitimate expectation of privacy if he was a guest of the owner. *See State v. Leyba*, 1997-NMCA-023, ¶ 17, 123 N.M. 159, 935 P.2d 1171 (citing *Minnesota v. Olson*, 495 U.S. 91, 99 (1990)) ("Even a person who lacks the ability to regulate his access or to exclude others may have standing if he is a houseguest on the searched premises with the owner's permission and has a possessory interest in an item seized there.").

6

**{19}** In order for a court to conclude that Defendant had a constitutional basis for objecting to the search of another person's house, there must be evidence that Defendant was a guest with permission to be there. *See Minnesota v. Olson*, 495 U.S. at 98-99 (holding that an overnight guest has a legitimate expectation of privacy in the host's home); *Black's Law Dictionary* 776 (describing a "guest" as a "person who is entertained or to whom hospitality is extended," which inherently implies permission). Simply being present in the house at the time of the police intrusion is not a sufficient factual predicate to establish a violation of one's own right to be free from unreasonable searches and seizures. *Minnesota v. Carter*, 525 U.S. 90 (holding that even lawful presence in the home of another does not in itself create a reasonable expectation of privacy). *Compare State v. Hensel*, 1987-NMCA-059, ¶ 9, 106 N.M. 8, 738 P.2d 126 (holding that "[m]ere presence" on the premises is insufficient to give an individual standing to object to the police search), *overruled on other grounds by State v. Rivera*, 2008-NMSC-056, ¶ 22, 144 N.M. 836, 192 P.3d 1213, *with State v. Wright*, 1995-NMCA-016, ¶¶ 8, 13, 119 N.M. 559, 893 P.2d 455 (holding that standing existed when a defendant had permission from the homeowner to be in the house and was found by police in a bedroom with the door closed), *cert. denied*, 119 N.M. 389, 890 P.2d 1321 (No. 22,738, Mar. 23, 1995).

**{20}** Defendant's belief that he had permission to be in the house is not enough, alone, to establish standing because actual evidence of permission is required. The Court of Appeals in *Wright* extended standing to houseguests who do not stay overnight but who nonetheless are permitted by the owner or occupant of the property to use a private part of the residence. *See Wright*, 1995-NMCA-016, ¶ 13 ("[W]e do not believe that the framers of . . . the New Mexico Constitution intended that an individual's freedom from unreasonable searches and seizures should be interpreted so narrowly as to hold that an overnight stay is necessary in order to confer a legitimate expectation of privacy upon houseguests."). In *Wright*, a resident gave two visitors permission to stay in a bedroom of his house, which the visitors occupied briefly before the police arrived at the house. *Id.* ¶¶ 2-3. *Wright* held that the visitors had standing to object to a police search of the closed bedroom because they had a reasonable expectation of privacy, "especially" given that they had the permission of the owner to use a private part of the residence. *Id.* ¶ 13.

**{21}** In *Van Dang*, this Court rejected a defendant's claim of standing to challenge the warrantless search of a car where the defendant failed to provide evidence that his uncle who rented the car gave him permission to drive it. *See* 2005-NMSC-033, ¶ 12. The defendant was pulled over by police for speeding. *Id.* ¶ 1. When asked for identification, the defendant produced a California driver's license and a car rental contract that did not list the defendant as the renter or as an authorized driver. *Id.* A search of the car revealed drugs under the carpeting in the trunk. *Id.* The defendant filed a motion to suppress the evidence and testified at the motion hearing that he believed he had a right to drive the car and a right to privacy in its contents. *Id.* ¶ 2. The defendant did not explain this belief, and his uncle did not testify. *Id.* No other evidence was presented to explain the circumstances of the defendant's use of the car. *Id.* The district court denied the motion to suppress "because [the d]efendant failed to prove he had authority to be in possession of the vehicle he was driving at the time of the

7

search." *Id.* ¶ 3. This Court affirmed, holding that,

> in a case involving a rental vehicle where the driver is neither the renter nor listed on the rental contract as an authorized driver, the burden is on the driver to present evidence of consent or permission from the lawful owner or renter to be in possession of the vehicle in order to establish standing to challenge a search of the vehicle. As in [*United States v. Muhammad*, 58 F.3d 353, 355 (8th Cir.1995) (per curiam)], Defendant in this case neither called his uncle as a witness at the suppression hearing to verify he had granted Defendant permission, nor even made the claim that his uncle had authorized his operation of the vehicle. Having failed to make this threshold showing, Defendant fails to establish standing to challenge the search of the vehicle.

*Id.* ¶ 12.

**{22}**     Here, as in *Van Dang*, the record does not establish Defendant's permission to be in the house. *See State v. Hall*, 2013-NMSC-001, ¶ 28, 294 P.3d 1235 (stating that assertions of fact and arguments that are not supported by the record are not evidence). The police confirmed by a license check that Defendant lived in Corrales at an address different from the house where they found Defendant. Defendant did not respond to the officers' questions about whether he had permission to be there or whether the residents of the house knew he was there. The owner of the house did not testify at trial, and Defendant's friend Gutierrez testified only that he left Defendant at the place Gutierrez said "belong[ed] to Michael" so that Defendant could get his car. Although Defendant was able to correctly name "Michael" as the owner of the house, this does not establish that Defendant was an authorized guest in the house. Even if Defendant and Michael were friends or acquaintances, the facts that they knew each other and that Defendant entered Michael's house are not evidence that he was an authorized houseguest. Without such evidence, Defendant has not established a constitutionally protected expectation of privacy in another person's house.

**{23}**     Nor can standing be assumed from the fact that, as Defendant argues, he "was never indicted for breaking and entering" because it is Defendant's burden to establish evidence of standing in the record. *See Van Dang*, 2005-NMSC-033, ¶ 7. The prosecuting authorities, in their discretion, may have declined to charge Defendant with a trespassory offense. *See State v. Santillanes*, 2001-NMSC-018, ¶ 27, 130 N.M. 464, 27 P.3d 456 ("The Legislature has vested the district attorney with broad discretion . . . in its charging decisions."). More importantly, the two issues are separate and distinct: that the State did not charge Defendant with unlawful entry into the house has no bearing on whether evidence of standing exists in this record. *See State v. Waggoner*, 1981-NMCA-125, ¶ 14, 97 N.M. 73, 636 P.2d 892 (stating that a person's lawful presence in the place searched is not enough to establish standing because the issue of standing depends on whether the person had a constitutionally protected expectation of privacy in the place).

**{24}**     Defendant has established no prima facie claim of ineffective assistance of counsel

8

because this record does not have evidence of standing necessary for a suppression motion. If facts beyond those in the record on appeal could establish a legitimate claim of ineffective assistance of counsel, Defendant may assert it in a habeas corpus proceeding where an adequate factual record can be developed for a court to make a reasoned determination of the issues. Because of the failure of the existing record to establish that any constitutionally protected privacy interest of this defendant was violated by the officers, we need not reach any of the other issues related to the lawfulness of the officers' warrantless entry into the house where Defendant was found. Those issues can be more appropriately addressed, if necessary, in a habeas proceeding.

## IV.    CONCLUSION

{25}    We reverse the Court of Appeals and affirm the judgment of the district court.

{26}    **IT IS SO ORDERED.**

_____

**CHARLES W. DANIELS, Justice**

**WE CONCUR:**

_____

**BARBARA J. VIGIL, Chief Justice**

_____

**PETRA JIMENEZ MAES, Justice**

_____

**RICHARD C. BOSSON, Justice**

_____

**EDWARD L. CHÁVEZ, Justice**