This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-42204

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.

**CHRISTOPHER ERIC GABALDON,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Brett R. Loveless, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Van Snow, Deputy Solicitor General
Albuquerque, NM

for Appellant

Bennett J. Baur, Chief Public Defender
Mallory E. Harwood, Associate Appellate Defender
Santa Fe, NM

for Appellee

## MEMORANDUM OPINION

**HANISEE, Judge.**

**{1}** Defendant Christopher Eric Gabaldon was charged with criminal sexual penetration (CSP) of Victim in violation of NMSA 1978, Section 30-9-11(E)(3) (2009). Before trial began, the district court found that testimony from the State's proposed expert witness, a DNA analyst whose testimony was based on raw data processed by DNA lab technicians, would violate Defendant's Confrontation Clause rights because no

lab technicians were called to testify. The State now appeals the district court's order excluding that expert witness from testifying at trial. We reverse.

## BACKGROUND

**{2}** Defendant was charged with CSP of Victim based on the following allegations. Defendant took Victim to her home from a party where she got drunk. Victim woke up alone the next morning, called the police, and underwent a Sexual Assault Nurse Examiner (SANE) exam, the results of which were processed by lab technicians at Bode Technology. In its initial witness list, the State included a large number of "chain of custody" witnesses, including the SANE nurse who collected the samples and the lab technicians who handled the samples and the ensuing DNA extractions. But by the time the State filed its final trial witness list, it had narrowed the list of Bode Technology employees down to four, eliminating all lab technicians and naming only DNA analysts or technical reviewers of the DNA analysts' work. The SANE nurse remained on the final witness list as well.

**{3}** Trial was set to begin on July 1, 2024. The United States Supreme Court issued *Smith v. Arizona* on June 21, 2024, less than two weeks earlier. *See* 602 U.S. 779 (2024). *Smith* held that when one DNA analyst testifies about the findings and conclusions of *another* DNA analyst, the first analyst inevitably admits out-of-court statements (the findings and conclusions of the other DNA analyst) for their truth, triggering the Confrontation Clause. *See id.* at 798-99. On June 28, 2024, the State filed a motion in limine requesting the district court to allow one of the State's DNA analysts, Kelsey Dawson, to testify despite the holding of *Smith*.[1] The trial began, and after selecting but before swearing in the jury, the district court heard arguments regarding the State's motion.

**{4}** Presumably because it thought *Smith* may preclude Dawson from testifying to her *own* conclusions—which were based on raw data produced by a machine after different lab technicians prepared the samples and put them in the machine—the State argued that the work of the lab technicians and the results from the machine were not testimonial. Dawson was not yet present because the State did not expect her to testify in trial until the following day or thereafter. The State said that Dawson was available to testify at the hearing via a video call, if necessary, but the district court declined to accept the State's offer. Therefore, for support, the State proffered that Dawson would explain generally the six steps of DNA analysis, which in "assembly line" fashion includes extracting genetic information from SANE exam samples, putting this genetic information into a computer and then a machine to quantify and extract the DNA, and finally producing raw data to be reviewed by a DNA analyst. Defendant argued the opposite, contending that because Bode Technology had an agreement with the police department to process SANE kits for possible prosecution, the primary purpose of the lab technicians' work was to investigate and prosecute cases, making the out-of-court

---

[1] The district court later sanctioned the State for its late filing and we do not address the issue further.

statements, in the form of raw data relied upon by Dawson in drawing her conclusions, testimonial.

{5}     The district court found that Dawson necessarily interpreted "raw data" in "reaching her conclusion[]" that a match existed between the DNA extracted from Victim and Defendant's DNA profile. In reaching such a conclusion, Dawson "relied on the truth of the information entered into the machine" and "the processes used to reduce the DNA from tangible items (swabs) to data on the machine"; thus, at least "one or maybe a few more people in the chain" were necessary to establish the accuracy and reliability of the process of producing the raw data upon which Dawson relied. The district court then found such information and data to be "testimonial in nature," since the DNA technicians were contracted by the police department "to conduct forensic DNA analysis and specifically work[] with evidence in this case collected during a [SANE] investigation." Because Dawson was not present for the "receipt of and processing of the various swabs to be entered into the machine" and thus had to rely on testimonial statements from declarants who were neither unavailable nor previously cross-examined, the district court found that Dawson's testimony as to the results of her DNA analysis would amount to the "admission of testimonial hearsay." The district court denied the State's motion, excluded Dawson from testifying, and vacated the trial. The State appeals.

## DISCUSSION

{6}     Under the Sixth Amendment to the United States Constitution, testimonial hearsay is inadmissible. *See State v. Tollardo*, 2012-NMSC-008, ¶ 15, 275 P.3d 110 ("[E]very criminal defendant shall enjoy the right to be confronted with the witnesses against [them]." (omission, internal quotation marks, and citation omitted)). "The Confrontation Clause applies to witnesses against the accused who provide testimony for the purpose of establishing or proving some fact." *State v. Huettl*, 2013-NMCA-038, ¶ 16, 305 P.3d 956. We review confrontation claims de novo, as mixed questions of law and fact. *See id.*; *State v. Rivera*, 2008-NMSC-056, ¶ 10, 144 N.M. 836, 192 P.3d 1213 (reviewing suppression motions as "mixed question[s] of law and fact").

{7}     Because both the State's and Defendant's arguments revolve around whether the district court followed the United States Supreme Court's guidance in *Smith*, we summarize that case. Like the case before us, *Smith* dealt with a confrontation claim, which has two parts: a hearsay analysis and an analysis of the testimonial nature of hearsay. *See* 602 U.S. at 784. We begin, as does *Smith*, with a discussion on hearsay. We situate *Smith* in New Mexico law and address the parties' arguments thereon.

## I.     Summary of *Smith*

{8}     In *Smith*, the trial court allowed a surrogate DNA analyst to testify in specific detail and in intimate reference to a report compiled by another, unavailable, and unexamined DNA analyst. *See id.* at 789-91. *Smith* first looked at the hearsay component of the confrontation analysis, specifically determining whether the out-of-

court statements—there, the nontestifying DNA analyst's statements about her lab work—came into evidence for their truth. *Id.* at 792-800. The Court concluded that they did and rejected the notion that an expert's recitation of another analyst's statements is not offered for the truth of the matter asserted—and therefore was not hearsay—when the recitation was simply the basis for the testifying expert's opinion. *Id.* at 795, 800. The Court held that when the surrogate DNA analyst testified about the precautions the nontestifying DNA analyst took, the standards she followed, the tests she performed, and the results she obtained, the surrogate analyst admitted out-of-court statements (the findings and conclusions of the nontestifying DNA analyst) for their truth. *See id.* at 798-800.

**{9}** The United States Supreme Court also explained how to determine whether an out-of-court statement conveyed to the jury is testimonial, an explanation on which the State heavily relies in its argument that the district court here erred. *See id.* at 800-01. In the State's view, the district court erred in excluding Dawson's testimony because the district court did not first identify what particular statements from nontestifying witnesses she would communicate to the jury. This error prevented the district court from completing *Smith*'s second required step in the analysis—evaluating the primary purpose of each statement. *See id.* at 800. Defendant responds by saying that *Smith* "abrogates" New Mexico precedent regarding raw data, namely that raw data is not testimonial. *See Huettl*, 2013-NMCA-038, ¶ 41.

**{10}** However, *Smith*'s guidance on determining the testimonial nature of evidence, while helpful, was provided in dicta. *See* 602 U.S. at 800-03; *see also State v. Mares*, 2024-NMSC-002, ¶ 38, 543 P.3d 1198 (explaining that dicta is not binding authority). We therefore adhere to New Mexico appellate jurisprudence in determining the testimonial nature of hearsay below.

## II. The State Did Not Proffer Testimony About the Testing Process

**{11}** The State's proffer involves two types of evidence—testimony about the process for testing samples, and testimony about the results produced by the machine.[2] We analyze whether either type violates the Confrontation Clause. As for the first kind of testimony, the State proffered that Dawson would testify generally about the six steps of processing DNA evidence but not whether or not those steps or quality control measures were followed in this case. More specifically, the State's proffer was that the analyst would testify to her knowledge about the process generally and then skip to the results that were generated by that process, including her interpretation of those results. Put simply, the State did not intend to have the analyst testify about the process for the DNA test that she did not perform or to verify that the appropriate process happened.

**{12}** The State's proffer of the testimony about the testing process itself therefore does not appear to implicate the hearsay concerns outlined in *Smith*. The surrogate

---

[2]Given our de novo review of questions of law, we review the State's proffers rather than the district court's findings on those proffers, to determine whether such is violative of Defendant's confrontation rights.

analyst in *Smith* testified about the truth of what the original analyst wrote in the notes and report and relied on the truth of those statements to form an opinion. In the present case, the analyst's opinion relies not on the statements of other people about what steps they took, but on her presumption—challengeable at trial by Defendant by use of cross-examination and argument—that the appropriate steps (which the analyst knows about personally) were taken. To the extent the testimony about the testing process aligns with the State's proffer, we see little in common with the kind of evidence that the *Smith* Court determined to be hearsay. Our Confrontation Clause analysis as to this first type of evidence ends there. *See Huettl*, 2013-NMCA-038, ¶ 34 ("The Confrontation Clause forbids the introduction of testimonial *hearsay*." (emphasis added) (internal quotation marks and citation omitted)).

### III.    The State Proffered Testimony About Raw Data, in Line with New Mexico Precedent

**{13}**    The other part of the State's proffer involved the raw data generated by the machine used to quantify and extract DNA from samples provided. As the first and only analyst to examine the raw data and draw conclusions therefrom, the State asserted that Dawson would testify as to those conclusions, specifically that the DNA sample from Victim matched the DNA of Defendant's profile.

**{14}**    *Smith* does not address raw data, but New Mexico law does, explicitly finding it to be nontestimonial. In *State v. Navarette*, our Supreme Court explained that "an expert witness may express an independent opinion regarding [their] interpretation of raw data without offending the Confrontation Clause." 2013-NMSC-003, ¶ 22, 294 P.3d 435. "If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted." *Id.* ¶ 19 (internal quotation marks and citation omitted).

**{15}**    This Court came to a similar conclusion in *Huettl*. *See* 2013-NMCA-038, ¶ 26. There, the State "never attempted to admit into evidence any out-of-court [statement]," and thus the raw data produced by a machine that was operated by nontestifying witnesses and relied upon by a testifying analyst did not threaten the defendant's confrontation rights. *See id.* ¶ 26. This Court noted that

> [w]hat has emerged as clearly permissible under the Confrontation Clause [and evidentiary rules] is expert, scientific testimony *based upon* facts or data of which the expert has been made aware, even when those facts or data would otherwise be inadmissible, provided that the expert testifies only to his or her own, independently derived conclusions.

*Id.* ¶ 35 (emphasis added); *see State v. Gonzales*, 2012-NMCA-034, ¶¶ 1, 19, 274 P.3d 151 (holding permissible a doctor's prospective cause-of-death testimony since such testimony was her "own opinion[] and conclusion[]" and not merely a parroting of another doctor's autopsy report.).

**{16}** Because the New Mexico Supreme Court has recognized that "an expert witness may express an independent opinion regarding [their] interpretation of raw data without offending the Confrontation Clause," *Navarette*, 2013-NMSC-003, ¶ 22, a holding unblemished by *Smith*,[3] we hold that the district court erred in barring Dawson from testifying. Having held that the raw data relied upon by Dawson in drawing her conclusions is not testimonial, our Confrontation Clause analysis need proceed no further. *See Huettl*, 2013-NMCA-038, ¶ 34 ("The Confrontation Clause forbids the introduction of *testimonial* hearsay." (emphasis added) (internal quotation marks omitted)).

**CONCLUSION**

**{17}** We reverse.

**{18}  IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**KATHERINE A. WRAY, Judge**

---

[3]In our view, *Smith* and the Supreme Court cases that preceded it regarding substitute analyst testimony do not come into play in this case because the analyst the State sought to have testify was no substitute; she was the analyst who interpreted the raw data collected by a SANE nurse and produced by lab technicians and DNA-extracting machines. *See Smith*, 602 U.S. 779; *Williams v. Illinois*, 567 U.S. 50 (2012) (where a majority of justices agreed that the trial court was wrong in its reasoning that an absent analyst's testimony could be admitted by a substitute analyst since it went to the basis of the testifying analyst's testimony, not to the truth of the absent analyst's statements); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009) (where the state could not introduce one lab analyst's written findings through the testimony of a substitute analyst); *Bullcoming v. New Mexico*, 564 U.S. 647 (2011) (same).